UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-LENARD/OTAZO-REYES(s)(s)

UNITED STATES OF AMERICA,

     *Plaintiff,*

v.

PHILIP ESFORMES, *et al.*,

     *Defendant.*

_____/

## DEFENDANT'S MOTION FOR A LIMITED BILL OF PARTICULARS

     The Defendant, PHILLIP ESFORMES, through undersigned counsel, respectfully moves this Court, pursuant to Rules 7(c)(1) and (f) and 16 of the Federal Rules of Criminal Procedure and the Due Process and Grand Jury Clauses of the Fifth Amendment, for a limited bill of particulars concerning the following inherently vague allegations in the Second Superseding Indictment ("SI"):

1.     Identify the "other medical professionals" who allegedly received kickbacks "in exchange for medically unnecessary referrals" to Mr. Esformes' facilities. SI, pp. 9, ¶5; p. 10, ¶ 9; p. 19, ¶5.

2.     Identify the "physicians" to whom Mr. Esformes allegedly paid "kickbacks and bribes." SI, p. 10, ¶¶ 9, 11; p. 12 ¶ 21; p. 13, ¶22; p. 19, ¶¶4-5.

3.     Identify the specific medical records for the over 14,000 patients serviced by Mr. Esformes' facilities that were allegedly "fake" or "falsified, fabricated and altered," and how they were altered. SI, p. 13 ¶¶ 25-26; p. 15 ¶ 3.

4.   Identify the patients who the government claims were referred to Mr. Esformes' facilities allegedly in return for the payment of "kickbacks and bribes." SI,  p. 9, ¶ 3; p. 10, ¶¶ 9, 11; p. 12, ¶¶ 21-22; p. 14, ¶ 31.

5.   Identify the patients who allegedly received unnecessary services and a description of what those unnecessary services allegedly were. SI, p. 10, ¶¶ 9, 11.

6.   Identify the following entities or individuals mentioned only generically or by initials in the Indictment:

   a.   Pharmacies 1, 2 and 3. SI, p. 6,  ¶ 28; p. 13, ¶ 23 p.20, ¶ 10.

   b.   Diagnostic companies 1-5. SI, p. 7,  ¶ 30; p. 13, ¶ 23; p. 13, ¶ 23.

   c.   Laboratory 1. SI, p. 7,  ¶ 31; p. 13, ¶ 23; p. 13, ¶ 23.

   d.   Physician Vision Group 1. SI, p. 7,  ¶ 32; p. 13, ¶ 23.

   e.   Physician 1.  SI, p. 7,  ¶ 33; p. 13, ¶ 23;.

   f.   AHCA Employee 1, SI, p. 7, ¶ 42; pp. 13-14, ¶ 27; p. 30, ¶ 1.

   g.   AHCA Intermediaries 1 and 2. SI, p. 7, ¶¶ 43-44; pp. 13-14, ¶ 27; p. 30, ¶ 1.

7.   Identify the "patients with psychiatric conditions" in the allegation at p. 10; ¶ 8, of the SI.

In support of this motion, the Defendant states the following:

1.   The instant case involves accusations about 18 Assisted Living Facilities ("ALFs") or Skilled Nursing Facilities ("SNFs") that the government contends provided services to over 14,000 patients over 14-year period covered by the Second Superseding Indictment, 2002-2016.

2.     The government has drafted the indictments in such a way as to imply that all 14,000 patients were illegitimate.  During the 14-year period covered by the Indictment, many physicians, medical professionals, vendors and providers recommended Mr. Esformes' facilities to the 14,000-plus patients referred to in the Second Superseding Indictment. The discovery in this case has been massive. And, neither the Second Superseding Indictment nor the discovery identify *which* of the 14,000-plus patients and which physicians, medical professionals, vendors and providers the government contends were paying or were being paid "kickbacks and bribes" and/or were providing the alleged medically unnecessary services.

3.     Although the Second Superseding Indictment refers to the "recycling" of patients, neither the Second Superseding Indictment nor the discovery identify who the repeat patients were and why the services provided to them were medically unnecessary. Indeed, no "medically unnecessary" services are alleged anywhere in the Indictment except for the $157 for patient "S.J." in Counts 2-5. Yet, the government claims that the fraud in this case approached "a billion dollars" in claims.

4.     The government has identified over 1800 (possibly up to 2200) boxes of discovery as relevant to this case. The 1800+ boxes contain items seized in four separate cases: Greater Miami Behavioral Health, Morales, Delgado, and American Therapeutic Corporation. Approximately 800 of those boxes are not labeled. In addition to those 1800+ boxes, the government has also identified as relevant a computer server containing the electronic records from the American Therapeutic Corporation investigation. In essence, the government has identified as relevant to this case the discovery and the trial exhibits of 4 prior cases without explaining how in particular those cases are related to this case. A team of lawyers, paralegals, and other staff have reviewed approximately

1,000 of those boxes to attempt to identify the discovery related to the allegations in this case. The boxes contain paperwork from numerous different people. From reviewing the boxes alone, it is impossible to tell who were the people supposedly involved in the alleged kickback scheme and in rendering allegedly medically unnecessary services. Without knowing the names of the patients alleged to have been the subject of fraud and the names of the physicians and vendors who were engaged in the alleged kickback scheme, the defense is left to guess at what might be important in the case.

5.      Mr. Esformes cannot adequately prepare for trial without knowing the identities of the key (a) patients, (b) physicians and other medical professionals; (c) providers; (d) vendors; (e) pharmacies; (f) diagnostic companies; (g) AHCA employees and intermediaries; and (h) other unnamed people and entities the government claims were part of the fraud and, most importantly, that the government intends to specifically rely on at trial to prove the charges. Nor will his Fifth Amendment rights against being twice placed in jeopardy be safeguarded without proper identification of these allegations.

6.      A defendant's right to particularization of vague allegations is grounded in Rules 7(c)(1) and 7(f) of the Federal Rules of Criminal Procedure. Rule 7(c)(1) states that an "indictment ... shall be a plain, concise and definite written statement of *the essential facts* constituting the offense charged."  (Emphasis added.)  The rule codifies the requirement of the Sixth Amendment that "in all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation."  *See generally Russell v. United States*, 369 U.S. 749, 770-71 (1962) ("where guilt depends so crucially upon such a specific identification of fact, our cases have

-4-

uniformly held that an indictment must do more than simply repeat the language of the criminal statute").

7.    When an indictment fails to contain such "essential facts," a district court must either dismiss it as impermissibly vague or "direct the filing of a bill of particulars" under Rule 7(f).

8.    A bill of particulars serves to "[1] inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense… [2] minimize surprise at trial… and [3] to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting *United States v. Cole,* 755 F.2d 748, 760 (11th Cir.1985)); *see also United States v. Horton*, 526 F.2d 884, 887 (5th Cir. 1976) (citing *United States v. Bearden*, 423 F.2d 805 (5th Cir. 1970)). A bill of particulars "supplements an indictment by providing the defendant with information necessary for trial preparation." *Id. See also United States v. Ganim*, 225 F. Supp.2d 145, 156 (D. Conn. 2002). Accordingly, a bill of particulars may be granted on a showing "that without the requested particular, his own investigation could not glean the facts or theory which would preclude prejudicial surprise or allow meaningful opportunities for defense preparation to meet the government's evidence and theories." *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979).

9.    The requests in this motion all pertain to "essential facts" that form the basis for the charges. Yet, these "essential facts" are currently hopelessly muddled in ways that the massive discovery cannot cure.

10.    While a bill of particulars "may not be used to obtain a detailed disclosure of the government's *evidence* prior to trial," *United States v. Perez*, 489 F.2d 51, 71 (5th Cir. 1973) (citations omitted), a defendant is entitled to "enough information about the charge to prepare his

-5-

defense" even if in doing so, the government's "evidence or theories" are revealed. *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998); *see also Thevis*, 474 F. Supp. at 123 (holding that it is not "a legitimate objection to a motion for bill of particulars that it calls for an evidentiary response or a legal theory of the government, when furnishing this information is necessary to prepare a defense and to avoid prejudicial surprise at trial") (citations omitted).

11.     The government typically objects to having to provide a bill of particulars by arguing that the answers lie in discovery.  That is not the case here. As previously noted, the massive nature of the discovery, while helpful in many ways, simply does not provide the necessary particularization required under the circumstances of this case. *See United States v. Perraud*, No. 09-6019-CR-Zloch, 2010 WL 228013, at *11 (S.D. Fla. Jan. 14, 2000) (the Federal Rules of Criminal Procedure  "does not endow the Government with the right to drown a defendant in a sea of irrelevant, or even tangentially relevant, documents in an effort to hide the few particularly relevant documents from a defendant in the hope that trial will ensue before the defendant discovers such materials"). The problem is especially acute concerning the identities of the patients (and patient records) that the government intends to *specifically* rely at trial. *See United States v. Solnin*, 81 F. Supp. 3d 193, 209 (E.D.N.Y. 2015) (ordering government to disclose, within 30 days, "the identities of the John Doe victims, as well ass the corresponding e-mails and /or items underlying the charged counts").

12.     As previously noted, the government contends that there were over 14,000 patients served by the Esformes facilities over the course of the charged conspiracy. Mr. Esformes and counsel should not be left to guess which of those patients the government intends to rely on at trial. Under similar circumstances, numerous courts have entered orders requiring the government to identify the documents it actually intends to rely upon at trial.

-6-

13.     For example, in *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), the defendants were charged with a conspiracy to commit Medicare fraud.  The indictment, however, did not identify "which of these claims were false and in what way they were false." *Nachamie*, 91 F. Supp. at 572-75.  Instead, the government simply "produced over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims" in Rule 16 discovery. *Id.* at 571. The district court found the production of massive discovery insufficient notice and ordered the government to file a bill of particulars identifying the details of every allegedly false claim submitted and/or filed as part of the conspiracy.  *Accord United States v. Savin*, No. 00 Cr 45 (RWS) (S.D.N.Y. March 13, 2001), *2001 U.S. Dist LEXIS 2445*, at *10 (ordering government to identify specific financial transactions in a conspiracy/wire fraud prosecution through a bill of particulars where government had provided over 100,000 pages of discovery, forcing Savin to "comb through this veritable mountain of documents and to attempt to guess which of the numerous transactions documented therein ... over a six-year period, are alleged by the government to have been improper").

14.     Similarly, in *United States v. Turkish*, 458 F. Supp. 874 (S.D.N.Y. 1978), *aff'd*, 623 F.2d 769 (2d Cir. 1980), the defendant sought "a direction to the government to indicate which of the approximately 25,000 documents relating to this case in the government's possession it intends to use at trial, rather than 'burying the defendant in paper' by merely generally making all of the documents available to defendants." 458 F. Supp. at 882. The court granted the motion, ruling that Rule 16 requires the government to allow defendants to inspect and copy all documents "which will be relied on or referred to in any way by any witness called by the government during its case in chief."  *Id.* (citation omitted).

-7-

15.     In *United States v. Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989), when the government produced over 300,000 documents in discovery, the defendant argued that the government's Rule 16 obligations require more than to merely "identify several thousand pages, any of which it 'may' rely on at trial." 727 F. Supp. at 1484.  The court agreed, holding that "this broad brush approach ... is not sufficient to meet [the government's] obligations" under Rule 16.  *Id.* The court ruled that "basic fairness" required disclosure within thirty days of its order.

16.     Finally, in *United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994)), the defendants were charged with falsifying Eastern Airlines airplane maintenance records.  In discovery, the government produced "thousands of pieces of paper." *Upton*, 856 F. Supp. at 747.  However, of those "thousands" of pages, the indictment only put the defendants on notice of a handful of documents that the government actually claimed were "falsified."  Relying on *Turkish*, *Poindexter* and *United States v. Brotnovsky*, 820 F.2d 572 (2d Cir. 1987), the court ordered the government to specifically identify the "falsified" records:

> The purpose of requiring the government to identify which documents it will rely upon at trial in a situation such as this  -- where there are thousands of documents -- is to allow the defendant to adequately prepare his or her defense.  General familiarity with the nature of the documents, as in this case, will not allow defendants to do that if they are not informed which documents include the allegedly falsified maintenance information and which documents the government witnesses will refer to or rely upon.

*Upton*, 856 F. Supp. at 747. *See also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (reversing conviction where government relied upon uncharged acts of extortion, recognizing that the "wide latitude" given the government to formulate broad-ranging charges comes with "an obligation to particularize the nature of the charge"); *United States v. Brotnovsky*, 820 F.2d 572, 575 (2d Cir. 1988) (reversing RICO convictions where government introduced evidence concerning

-8-

burglaries and false statements not listed as predicate acts, recognizing that lack of specificity left "[t]he relevance of key events ... shrouded in mystery at the commencement of and throughout the trial").[1]

17.  Finally, Mr. Esformes cannot effectively retain an expert to opine on medical necessity until the government identifies the universe of patients who supposedly received medically unnecessary services. The government itself asked Magistrate Judge Otazo-Reyes for pre-trial access to 198 specific patient files, admitting during the hearing on March 13, 2017, that the government still did not have any expert opining on medical necessity:

> AUSA Young – ". . . the Government would like to collect those documents, those patient files before trial, which are highly relevant to the Government's case to give the Government time to assess those files and to provide them to an expert for review on whether the services were billed and/or necessary." [DE 237, Transcript of Proceedings, March 13, 2017, at p. 6].

> AUSA Young – "With respect to your question, Your Honor, about additional investigation, it would be more so that the Government's expert could review the files and opine on the necessity or lack thereof of the purported services that were billed by the Defendant." [*Id*. at p. 6-7].

---

[1] One court addressing this issue exercised its discretion in a somewhat different way. Rather than order the government to specify which documents it intended to use at trial, the court in *United States v. McDade* ordered the government to identify "discrete parcels of material that it does *not* plan to use at trial":

> What I am directing is that, to continue with the trite, bucolic metaphor, if the government does in fact know that of the, say, 27 empirical haystacks which it has forked over to the defense, there are 11 haystacks, for example, which the government views as being so far afield from the focus of the trial that it does not intend to use them, then the cause of speedy and efficient justice would be furthered by the government's telling the defense about those 11 haystacks which contain no needles.

No. 92-249 (E.D. Pa. December 11, 1992), 1992 U.S. Dist. LEXIS 19254 *(emphasis added). See also United States v. McDade*, 827 F. Supp. 1153, 1187 n. 30 (E.D. Pa. 1993) (referring to its unpublished discovery order concerning the identification of irrelevant material).

AUSA Young – "Your Honor, the rationale there was obviously the expert witness would be assessing and investigating whether the services were billed appropriately given the documentation that was provided in response to the trial subpoena." [*Id.* at p. 13].

For these same reasons, Mr. Esformes is entitled to a bill of particulars identifying all the patients that the government contends received medically unnecessary services.

## CERTIFICATION PURSUANT TO LOCAL RULE 88.9

Pursuant to Local Rule 88.9, undersigned counsel communicated with opposing counsel who indicated that the government objects.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on April 7, 2017, this pleading was electronically filed with the Clerk of Court using the CM/ECF and that this document is being served on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

**CARLTON FIELDS**
100 S.E. 2nd Street
4200 Miami Tower
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

By:     s/Michael Pasano
       **MICHAEL PASANO**
       Florida Bar No. 0475947

-10-

**TACHE, BRONIS, CHRISTIONSON**
  **& DESCALZO, P.A.**
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Tel: (305) 537-9565

By: ___s/Marissel Descalzo___
      **MARISSEL DESCALZO, ESQ.**
      Fla. Bar. No 669318

*Permanent Appearances for Philip Esformes*

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, FL  33131
Tel: (305) 371-6421  Fax: (305) 358-2006

By: _____*/s/ Roy Black*_____
      **ROY BLACK, ESQ**.
      Fla. Bar No. 126088
      **HOWARD SREBNICK, ESQ**.
      Fla. Bar No. 919063
      **JACKIE PERCZEK, ESQ**.
      Fla. Bar No. 0042201
      **G. RICHARD STRAFER, ESQ**.
      Fla. Bar No. 389935

*Limited Appearances for Philip Esformes*