UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-LENARD/OTAZO-REYES(s)(s)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| PHILIP ESFORMES, *et al.,* | ) |
| | ) |
|     *Defendants*. | ) |
| _____ | ) |

### DEFENDANT PHILIP ESFORMES' MOTION TO SUPPRESS EVIDENCE OF WARRANTLESS SEIZURES AND INCORPORATED MEMORANDUM OF LAW

The defendant, PHILIP ESFORMES, through undersigned counsel, respectfully moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment to the United States Constitution, for an order suppressing all evidence, direct and derivative, from the warrantless seizures from the Defendant's home following his arrest there on July 22, 2016, including but not necessarily limited to: (1) three cellular telephones and their contents; (2) a black note book; and (3) a page from a note pad. **The Defendant further moves for an evidentiary hearing on this motion**. In support of these requests, the Defendant states the following:

    1.    On July 22, 2016, the government arrested Mr. Esformes at this home, 16047 Collins Avenue, Sunny Islands, Florida.

    2.    After arresting Mr. Esformes, law enforcement officers seized from another room in his residence (a) three cellular telephones; (b) a black appointment book (which the Prosecution

Team now characterizes as Mr. Esformes' "work book"); and (c) a note pad with hand-written notations.

3. The Prosecution Team did not have a search warrant for Mr. Esformes' residence, even though the day before, on July 21, 2016, the Prosecution Team obtained a search warrant for Eden Gardens, one of the Assisted Living Facilities associated with Mr. Esformes.

4. To this day, the Prosecution Team has never sought or obtained search warrants for the Collins Avenue residence or for any of Mr. Esformes' previous residences.

5. There were no exigent circumstances to support these warrantless seizures. *See generally Riley v. California*, 134 S. Ct. 2473 (2014) (holding that warrantless seizures of cell phones and data were not justified as searches incident to arrest because the phones could not be used as weapons to harm arresting officers and endangered no one). *See also United States v. Zavala*, 541 F.3d 562 (5th Cir. 2008).

6. On August 12, 2016, the Prosecution Team belatedly applied for and obtained a warrant to search the contents of the phones and the "work book." The Application asserted that the warrantless seizures were justified under the "plain view" doctrine because the phones and book were "lying in plain view on top of a desk located in the [home] office." *See* **Exhibit** 1, at p. 18.[1]

7. The fact that Mr. Esformes used cellular telephones, however, did not justify the warrantless seizures under the plain view doctrine. "An officer may seize evidence that is in plain view despite the failure to obtain a search warrant if two elements are satisfied: (1) lawful access to the object seized, and (2) the incriminating nature of the object seized is immediately apparent." *United States v. Hromada*, 49 F.3d 685, 690 n. 11 (11th Cir.1995) (citing *Horton v. California*, 496

---

[1] In its Application for the warrant, the Prosecution Team did not claim that the seizures were justified under an "incident to arrest" theory. Nor could it have done so under *Riley*.

U.S. 128, 136–37 (1990)). Even if the phones and book were located in a place where the officers were lawfully present – an assumption Mr. Esformes does not concede – the incriminating nature of the phones could not have been immediately apparent. As the Supreme Court correctly observed in *Riley*, "modern cell phones ... are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley*, 134 S.Ct. at 2484; *see also id.* at 2489 (citing a poll showing that "nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% percent admitting that they even use their phones in the shower") (citation omitted).

8.   "The 'immediately apparent' requirement is a vital constraint on the plain view doctrine exception to the Fourth Amendment warrant requirement." *United States v. Garcia*, 496 F.3d 495, 510 (6th Cir. 2007). "This constraint prevents law enforcement officers from engaging in a general 'exploratory search,' obviating the Fourth Amendment requirement of a particularized warrant." *Id.*, citing *Horton*, 496 U.S. at 136–37; *Arizona v. Hicks*, 480 U.S. 321, 334 (1987) (O'Connor, J. dissenting) ("The purpose of the immediately apparent requirement is to prevent general, exploratory rummaging in a person's belongings"). Accordingly, courts should avoid diminishing the strength of this requirement at the risk of "jeopardize[ing] fundamental Fourth Amendment principles." *Id*.

9.   "The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995) (citing *Hicks*, 480 U.S. at 326–27. "If, however, the police lack probable cause to believe that an object in plain view is [evidence of a crime or] contraband without conducting some further search of the object—i.e., if its incriminating character

[is not] immediately apparent—the plain-view doctrine cannot justify its seizure." *United States v. Lall*, 607 F.3d 1277, 1291 (11th Cir. 2010) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)); *accord Hicks*, 480 U.S. at 325–26.

10. In the August 2016 search warrant Application, the Prosecution Team asserted that at the time of the seizures, "[l]aw enforcement ha[d] not searched, analyzed, or reviewed the phone in any way." *See* **Exhibit 1**, at pp. 17-18. That assertion, however, was contradicted by the Application itself, as the Prosecution Team claimed that it had probable cause to seize the phones because the agents discovered that *the serial numbers* of two of the phones were registered to Mr. Esformes with either Verizon or AT&T. *Id.* at 16.

11. When Mr. Esformes was arrested, his phones were lying flat *with the screen side facing up*. Serial numbers on his phones are etched on the *back side*, in print so small that it is barely legible without a magnifying glass. Agents would have had to pick up the phones, turn them over, and view and analyze the backs to detect the minuscule serial numbers (perhaps using a magnifying glass). In other words, the only way that the agents could have known the serial numbers of the phones was by "search[ing], analyz[ing], or review[ing]" them. Accordingly, the serial numbers cannot be used to justify the seizures. *See United States v. Jackson*, 155 F. Supp. 3d 1320, 1333 (S.D. Fla. 2014) (suppressing cell phones where there was no evidence "point[ing] to the incriminating nature of the cell phones" and the contents of backpack, since "the plain view doctrine cannot be applied to allow the admission of the contents of the backpack beyond what was plainly visible to the officers during the protective sweep"), *aff'd*, 618 Fed. Appx. 472 (11th Cir. 2015) (per curiam).

12. The Application attempted to bootstrap additional "facts" in support of the allegation of probable cause by observing that "on June 8, 2015, Gabriel Delgado contacted Esformes on cellular telephone number (224) 392-2700 at 9:51" and had an allegedly incriminating conversation. *See* **Exhibit 1**, at p. 15. However, that call was made *by Delgado at the Prosecution Team's request* for the very purpose of soliciting such statements. The Prosecution Team cannot concoct an incriminating phone call and later attempt to use that as proof that it "knows" that Mr. Esformes uses his phones to talk with alleged co-conspirators. In any event, the Prosecution Team had no evidence that *any* of the three phones found in Mr. Esformes' home were the same as the one used by Mr. Esformes to answer Delgados' government-instigated call.

13. An analogous situation occurred in *Hicks*, where law enforcement officers searched the defendant's apartment after learning that a bullet was fired through the defendant's floor, injuring his downstairs neighbor. *Hicks*, 480 U.S. at 323. As the search was justified only by the exigent circumstances surrounding the gunshot, its scope was limited to a search for the shooter, victims, or weapons. *Id.* at 324–25. However, upon entering the apartment, the officers noticed expensive stereo equipment, out of place in the otherwise ramshackle apartment. *Id.* at 325. Suspecting that the property might have been stolen, the officers moved the stereo equipment to expose the serial number. The Supreme Court held that by doing so, officers "produced a new invasion" that must itself be justified by probable cause. *Id.* at 325–26. "[T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of [the defendant's] privacy unjustified by the exigent circumstances that validated the entry." *Id.* at 325. The incriminating nature of the stereo equipment was not

immediately apparent. Finding that no probable cause existed to conduct this new search of the equipment, the Court affirmed the decision to suppress the evidence. *Id*.

14. Since the steps taken in *Hicks* to find and analyze the serial numbers could not be used to justify the seizure under the plain view doctrine, the steps taken by the agents in this case to identify the serial numbers of the phones could not be used to justify their seizure either.

15. The Application also alleges that before seizing the phones, the agents observed that two of the three phones contained the same text message – *the contents of which was not alleged to have been incriminating*. The Affidavit claims that the message came from someone with the same last name as a person identified only as a "Patient Recruiter" who allegedly was "known by agents to refer patients to Esformes and his network of facilities in exchange for illegal bribes and kickbacks." **Exhibit 1**, at p. 17. Since the Application does not claim that the message itself was incriminating, we fail to see how that observation amounts to anything.

16. In any event, the agents did not even know that the identity of the sender was the same person as the alleged "Patient Recruiter." Just the last names (not identified in the Application) allegedly matched. However, even assuming *arguendo* that the person who sent the text message was, in fact, the "Patient Recruiter" – a fact which the agents had *not* confirmed before seizing the phones – the only reason the agents believed that the "Patient Recruiter" was a criminal patient recruiter at all came only from "a tip originating from an unidentified complaining physician stating that Patient Recruiter 1 recruited patients to serve as purported patients at Esformes' ALFs and SNFs." *Id.* In addition to not even identifying "the physician" in question, there was no indication in the Application that the tip had ever been corroborated or that the tipster-physician was known

to be reliable. Thus, the observation of the last name alone did not create probable cause to seize the two phones.

17. *No* additional relevant information was alleged as to the *third* phone. The Application just lumped the third phone with the other two.[2]

18. The incriminating character of the so-called "work book" was even less "readily apparent." In *United States v. Silva*, 714 F. Supp. 693 (S.D.N.Y. 1989), the court found that the incriminating nature of the contents of a notebook was not apparent until law enforcement officers opened the notebook and inspected its contents. 714 F. Supp. at 696 (citing *Hicks*, 480 U.S. at 325–26). "Any act on the part of an agent *beyond merely viewing what is already exposed* would clearly constitute a search." *Id.* at 696 (emphasis added). As probable cause to open the notebook did not exist, the seizure of the notebook was improper. *Id*. at 696.

19. In the instant case, the Application alleged that the notebook was already open. The actual writing in the appointment book, however, was not visible to the naked eye because it was covered by other things on the desk. Accordingly, for the pages in the appointment book to have

---

[2] The Application attempted to bolster the probable cause showing with events that allegedly occurred long *after* the warrantless seizures had taken place. Thus, the Application asserted that while being transported to jail, Mr. Esformes–

> --asked to use his three Apple iPhones to contact various *family members and his attorney*. Agents agreed to the request. Agents observed Esformes enter three different passwords into each Cellular Phone 1, Cellular Phone 2, and Cellular Phone 3. Esformes unlocked each of the three devices, and placed a variety of phone calls on them while in custody.

*Id.* at p. 18 (emphasis added). We fail to see how calls made to "family members and his attorney" added anything to the probable cause calculus even if post-seizure activity could be used to justify an already-completed seizure – and it cannot. At most, these "facts" merely support an inference that the phones belonged to Mr. Esformes, an inference that already existed by virtue of the location of the phones in Mr. Esformes' residence.

been in "plain view," the agents would have had to first remove the materials on top. Thus, contrary to the allegations in the Application, the appointment book's pages were not in "plain view" at all.

20. Additionally, any purported incriminating nature of the pages in the work book was certainly not "readily apparent." The entire workbook was turned over in discovery. Both the book and the note pad contain handwritten scribbles which are virtually undecipherable. Nothing incriminating could possibly be "readily apparent."

21. The Application contained no justification at all for seizing the note pad and did not acknowledge that the note pad contained privileged material (perhaps because no one from the Prosecution Team could decipher the handwriting).

## CONCLUSION

The warrantless seizure of the three phones, the notebook, and the note pad, violated the Fourth Amendment. The seizures cannot be excused under either the "incident-to-arrest" or plain view doctrines. Accordingly, the Court should suppress that evidence as well as any derivative evidence obtained as a result of the unconstitutional seizures.

## CERTIFICATION PURSUANT TO LOCAL RULE 88.9

Pursuant to the Local Rule 88.9, in a good faith effort was made to resolve the issues raised in the instant motion but opposing counsel indicated that the Government opposes the relief sought.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on April 7, 2017, this pleading was electronically filed with the Clerk of Court using the CM/ECF and that this document is being served on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

**CARLTON FIELDS**
100 S.E. 2nd Street
4200 Miami Tower
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

By:    s/Michael Pasano
      **MICHAEL PASANO**
      Florida Bar No. 0475947

**TACHE, BRONIS, CHRISTIONSON**
 **& DESCALZO, P.A.**
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Tel: (305) 537-9565

By:    s/Marissel Descalzo
      **MARISSEL DESCALZO, ESQ.**
      Fla. Bar. No 669318

*Permanent Appearances for Philip Esformes*

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, FL 33131
Tel: (305) 371-6421 Fax: (305) 358-2006

By:    */s/ Roy Black*
      **ROY BLACK, ESQ**.
      Fla. Bar No. 126088
      **HOWARD SREBNICK, ESQ**.
      Fla. Bar No. 919063
      **JACKIE PERCZEK, ESQ**.
      Fla. Bar No. 0042201
      **G. RICHARD STRAFER, ESQ.**
      Fla. Bar No. 389935

*Limited Appearances for Philip Esformes*