UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-LENARD/OTAZO-REYES(s)(s)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| PHILIP ESFORMES, *et al.,* | ) |
| | ) |
| *Defendants.* | ) |
| _____ | ) |

> **DEFENDANT ESFORMES' CONSOLIDATED MOTIONS TO DISMISS THE SECOND SUPERSEDING INDICTMENT IN WHOLE OR IN PART, SUPPRESS EVIDENCE AND/OR SEVER COUNTS 32 & 33 AND EXCLUDE THE OBSTRUCTION EVIDENCE AND INCORPORATED MEMORADNUM OF LAW**

**ROY BLACK, ESQ.**
Fla. Bar No. 12608
 **HOWARD M. SREBNICK, Esq.**
Fla. Bar No. 919063
**JACKIE PERCZEK, ESQ**.
Fla. Bar No. 0042201
**G. RICHARD STRAFER, ESQ.**
Fla. Bar No. 389935
**BLACK, SREBNICK, KORNSPAN
  & STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
TEL: (305) 371-6421

**MICHAEL PASANO, ESQ.**
Fla. Bar No. 0475947
**CARLTON FIELDS**
100 S.E. 2nd Street
4200 Miami Tower
Miami, Florida 33131-2114
Tel: (305) 530-0050

**MARISSEL DESCALZO, ESQ.**
Fla. Bar. No 669318
**TACHE, BRONIS, CHRISTIONSON & DESCALZO,
P.A.**
150 S.E. 2nd Avenue, Suite 600
 Miami, Florida 33131
Tel: (305) 537-9565

# TABLE OF CONTENTS

Page

MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

MEMORANDUM OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      COUNTS 32 AND 33 ARE MISJOINED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     COUNT 33 FAILS TO STATE A COGNIZABLE OFFENSE. . . . . . . . . . . . . . . . . . . . . . 5

       A.     Since the Delgados' Legal Opinions Were Not "False," They
          Were Not Capable of Obstructing Justice. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.     The Declarations Were Not Material Because They Could Never
          Have Been "Used In" the *Delgado* Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    COUNT 33 SHOULD BE DISMISSED, BECAUSE THE PROSECUTION TEAM'S THEORY
       OF PROSECUTION RENDERS 18 U.S.C. § 1503 UNCONSTITUTIONAL AS APPLIED. . . . . . 8

IV.     THE INVASION OF THE DEFENSE CAMP REQUIRES THE DISMISSAL OF THE ENTIRE
       INDICTMENT AND/OR THE SUPPRESSION OF EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . 12

       A.     Dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.     Suppression of Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       C.     Suppression Is Also Required Under the Fourth Amendment and
          Title III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.      AT THE VERY LEAST, THE COURT SHOULD SEVER COUNTS 32 AND 33 UNDER FED.
       R. CRIM. P. 14 AND EXCLUDE THAT EVIDENCE FROM THE TRIAL ON THE
       REMAINING COUNTS UNDER FED. R. EVID. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATION PURSUANT TO LOCAL RULE 88.9. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

The defendant, PHILIP ESFORMES, through undersigned counsel, respectfully moves this Court, pursuant to Rules 7(c)(1), 8(a), 12(b), 12(b)(3)(B)(iv), 12(b)(3)(A) and 14 of the Federal Rules of Criminal Procedure, the Fourth, Fifth and Sixth Amendments to the United States Constitution, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. ("Title III"), Rule 501 of the Federal Rules of Evidence, the attorney-client, work product and joint defense (or common interest) privileges, and the Court's supervisory power, for an order (1) dismissing Counts 32 and 33 of the Second Superseding Indictment for misjoinder; (2) dismissing Count 33 for failure to state offenses; (3) dismissing Count 33 because the Prosecution Team's theory of prosecution renders 18 U.S.C. § 1503 unconstitutional as applied; (4) dismissing the entire Second Superseding Indictment for numerous privilege violations or suppressing the evidence of Guillermo and Gabriel Delgado; and/or (5) severing Counts 32 and 33.

In support of these requests, Mr. Esformes states the following:

1.      Mr. Esformes adopts the "Preliminary Statement of Facts" contained in the accompanying Motion To Disqualify the Prosecution Team.

2.      Mr. Esformes also requests that the Court take judicial notice of the pleadings and orders in *United States v. Guillermo and Gabriel Delgado*, Case No. 14-CR-20359-Martinez (S.D. Fla.) (hereinafter the "*Delgado* case" or "*Delgado*"), including the fact that Mr. Esformes was never charged in Case No. 14-CR-20359.

3.      All three indictments in this case have alleged that Mr. Esformes obstructed justice by "funding Guillermo Delgado's flight from the United States to avoid trial." The sole evidentiary support for those allegations was generated by the Delgados and the Prosecution Team during the course of their exploitation of the Joint Defense Agreement ("JDA").

4.      Both obstruction counts have also consistently alleged that the "pending proceeding"

allegedly being obstructed – an essential element of § 1503 – was the *Delgados' criminal case before Judge Martinez* and not any "proceeding" involving Mr. Esformes.

## MEMORANDUM OF LAW

### I.   COUNTS 32 AND 33 ARE MISJOINED

Fed. R. Crim. P. Rule 8(a) allows for "[t]wo or more offenses [to] be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Whether initial joinder is proper under Rule 8(a) is determined on the face of an indictment. *United States v. Weaver*, 905 F.2d 1466, 1476-77 (11th Cir.1990).

The obstruction counts charge Mr. Esformes with obstructing the *Delgado* case before Judge Martinez. As to Count 32, the so-called "flight" discussions were in the context of Guillermo Delgado's apparent lack of a defense to the *drug conspiracy* charge in that case, not to Guillermo's, his brother Gabriel's, nor Mr. Esformes' involvement in or lack of involvement in a Medicare kickback conspiracy.[1] And, there is no drug conspiracy charge in the instant case. In short, there is no nexus between Guillermo Delgado's involvement in obtaining oxycontin and anyone's culpability for the Medicare-related charges at issue in the instant case. Therefore, Count 32 is misjoined and should be severed. *See United States v. Nettles*, 570 F.2d 547 (5th Cir. 1978) (holding that gambling allegations were misjoined with obstruction allegations); *United States v. Coleman*, 497 F. Supp. 619, 621-22 (N.D. Ill. 1980) (perjury charges misjoined with postal fraud counts); *United States v.*

---

[1] Guillermo Delgado also plead guilty to *only* Count 16 and his factual proffer in support of the plea confessed his guilt only as to the oxycontin allegations. *See Delgado,* DE 207 (Stipulated Factual Proffer); DE 208 (plea agreement); and DE 235 (Judgment).

*Slawik*, 408 F. Supp. 190 (D. Del.1975) (perjury counts misjoined with Travel Act counts), *aff'd without opinion*, 564 F.2d 90 (3rd Cir. 1976).

Count 33 is even more disconnected from the remaining charges against Mr. Esformes. It charges that Mr. Esformes created declarations for the Delgado brothers to sign and that he intended to "use" them "in" the *Delgado* case. However, the declarations did not require the Delgados to swear to any objective or historical *facts* but merely stated their *legal opinions* that Mr. Esformes had not committed any "improper" or "illegal" conduct and had never said anything to indicate that he had done anything "wrong." *See* **Exhibit 1**. The allegations in Count 33 about the purported evidentiary "use" of the declarations "in" the *Delgado* case are thus misjoined here.[2]

## II.    COUNT 33 FAILS TO STATE A COGNIZABLE OFFENSE

### A.    Since the Delgados' Legal Opinions Were Not "False," They Were Not Capable of Obstructing Justice

For the declarations at issue in Count 33 to obstruct justice the Delgados' statements therein would have to be "false." The declarations, however, are merely the Delgados' *legal opinions* about Mr. Esformes' conduct – whether Mr. Esformes' conduct was "improper", "illegal" or "wrong" – not statements of objective or historical fact. Count 33 fails to state a cognizable offense because opinions about the *legal ramifications* of Mr. Esformes' activities, rather than about *objective facts*,

---

[2] Some authority exists for joining perjury counts with other counts in an indictment, but only if there is a "direct connection ... between each of the perjury charges and one or more of the overt acts connected with ... a conspiracy count." *See United States v. Mitchell*, 372 F. Supp. 1239, 1255 (S.D. N.Y. 1973), citing *United States v. Sweig*, 316 F. Supp. 1148, 1158 (S.D. N.Y. 1970), *aff'd*, 441 F.2d 114, 118 (2d Cir.), *cert. denied*, 403 U.S. 932 (1971), and other authorities. However, *Mitchell*, *Sweig*, and most of the other cases therein cited arose in situations where each defendant, named in a conspiracy count, was also charged with having committed perjury about the same subject matter charged in the conspiracy count. *See, e.g., United States v. Cohn*, 230 F. Supp. 587 (S.D. N.Y.), *aff'd sub nom. Application of Gottesman*, 332 F.2d 975 (2d Cir. 1964). *See also United States v. Isaacs*, 493 F.2d 1124, 1159 (7th Cir.), *cert. denied*, *Kerner v. United States*, 417 U.S. 976 (1974). There are no such allegations here.

cannot be "false" as a matter of law and are thus incapable of "obstructing" any proceeding.

To be false, a "'statement must be with respect to a fact or facts' and '[t]he statement must be such that the truth or falsity of it is susceptible of proof.'" *United States v. Endo*, 635 F.2d 321, 323 (4th Cir. 1980) (citation omitted). Statements "which present legal conclusions are considered opinion, and cannot form the basis of a perjury conviction." *Id.* (citation omitted). Thus, in *Endo*, the Fourth Circuit reversed a perjury conviction where the defendant had made inconsistent sworn statements about whether she was "guilty" of the crime charged. The Fourth Circuit explained that such a statement was merely a legal opinion that could not be "false" at least prior to the defendant being convicted (and hence having been found "guilty"). *Id.* at 323.[3]

The Degados' statements about whether Mr. Esformes did or said anything improper, illegal or wrong were similarly merely opinions about the legal consequences of unstated actions that would have no factual basis unless and until Mr. Esformes was proven guilty. Such opinions, even if erroneous, cannot be "false." Because the declarations were not "false" they could not have obstructed justice. Hence, Count 33 fails to state an offense.

---

[3] *See generally* 60A Am. Jur. 2d Perjury § 19 (2016) ("The general rule under both federal and state law is that in order to support a perjury conviction, the false statement must be one of fact, and not of opinion or belief, even though the belief may be unfounded in fact or law, or the opinion may be erroneous." ) (footnotes omitted); *McAlpin v. Criminal Justice Standards and Training Comm.*, 155 So.3d 416, 421 (Fla. 1st DCA 2014) ("Personal opinions or matters of belief are not perjury...."); *In re: Applicant for Security Clearance*, ISCR Case No. 03-06770 (D.O.H.A.), 2004 WL 2896758, at *4 (DOHA Sept. 9, 2004) (Jaksetic, Ch., concurring) ("Proof that a person holds an unfounded, misguided or unwarranted opinion is not proof that the person has lied about his or her opinion.") (citation omitted); *People v. White* (1974), 59 Ill.2d 416, 418, 322 N.E.2d 1, 2 (1974) ("However, the alleged false statement must be a statement of fact and not a conclusion, opinion or deduction drawn from given facts. That the conclusion, opinion or deduction is erroneous, or is not a correct construction or a logical deduction from the facts cannot constitute false swearing.") (citations omitted); *State v. Henderson*, 90 Ind. 406 (1883) (affirming dismissal of perjury charge based on defendant's grand jury testimony that he had not "unlawfully" sold liquor, holding that a person's "opinion whether a certain act was lawful or unlawful, should not be called for, and if called for and given, or offered voluntarily, a charge of perjury can not be predicated upon it").

### B.     The Declarations Were Not Material Because They Could Never Have Been "Used In" the *Delgado* Case

Apart from the veracity or objective truth or falsity of the statements, Count 33 still fails to state an offense, because the declarations were incapable of ever being "used in" the *Delgado* case, as alleged in the Second Superseding Indictment. While the 2014 *Delgado* criminal case is a "proceeding," *Mr. Esformes was never a party in that proceeding* and that "proceeding" is distinct from the instant one. For that reason alone, Mr. Esformes could not "use" them in the *Delgado* case. Indeed, even if Mr. Esformes had been charged in the *Delgado* case, he still could not have "used" them, because he could not have introduced them into evidence as substantive evidence. "'Prior statements of witnesses are hearsay and are generally inadmissible as affirmative proof.'" *United States v. Khanani*, 502 F.3d 1281, 1291 (11th Cir. 2007), quoting *United States v. Gregory*, 472 F.2d 484, 487 (5th Cir.1973). The declarations could only have been "used in" the *Delgado* case, if the Delgados had gone to trial, taken the witness stand in their own defenses and were then asked to render opinions about Mr. Esformes' guilt. *See generally United States v. Palacios*, 556 F.2d 1359, 1362-63 (5th Cir.1977) (prior inconsistent statements admissible for impeachment).

The absurdity of that scenario is self-evident. Mr. Esformes was not a party in the *Delgado* case. Therefore, *his* guilt or innocence would have been irrelevant. And, even if the topic of Mr. Esformes' culpability could somehow have been relevant in the *Delgado* case, the Delgados' *lay opinions* about Mr. Esformes would have been inadmissible anyway,[4] so there never could have been

---

[4] Rule 701, entitled "Opinion Testimony by Lay Witnesses" provides that the testimony of a lay witness in the form of an opinion "is limited to one that is: (a) rationally based on the witness's perception; (c) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 ." The Delgados were obviously not qualified to render an opinion about Mr. Esformes' culpability. *See generally United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007). Similarly, opinion testimony about the credibility of others is inadmissible, whether lay or expert. *See, e.g.,*
(continued...)

anything to "impeach" (and no one present with any motive to do that "impeachment"). Thus, the only way the declarations could have been "used in" the *Delgado* trial would have been if Judge Martinez had allowed one of the parties to ask for the Delgados to give inadmissible lay opinions on an irrelevant subject for which the brothers were unqualified to testify.

To be material under the plain terms of § 1503, the "obstructive conduct" – here an alleged false statement – must at least have the *capacity* to "influence" or "impede" the proceeding. *See United States v. Pettigrew*, 77 F.3d 1500, 1511 n. 1 (5th Cir. 1996). When an obstruction charge is based upon false statements, courts have held that "a lie that is immaterial to the justice process is not a potential interference with it." *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir. 1999). Moreover, a materiality requirement is implicit in the statutory phrase "endeavors to influence, intimidate, or impede." *See also United States v. Thomas*, 916 F.2d 647, 651 (11th Cir. 1990) (citations omitted). *Accord United States v. Barfield*, 999 F.2d 1520, 1523 (11th Cir. 1993). The declarations did not have the capacity to obstruct justice,  because they never could have been "used in" the *Delgado* case, as charged in the Indictment.

## III.   COUNTS 33 SHOULD BE DISMISSED, BECAUSE THE PROSECUTION TEAM'S THEORY OF PROSECUTION RENDERS 18 U.S.C. § 1503 UNCONSTITUTIONAL AS APPLIED

While there is no summary judgment procedure for determining motions to dismiss for failure to state offenses under Fed. R. Crim. P. 12(b)(3)(B)(iv), pretrial constitutional challenges to theories of prosecution which impinge upon various constitutional rights are justiciable pretrial under Fed. R. Crim. P. *12(b)(3)(A). See e.g., United States v. Hylton*, 710 F.2d 1106, 1111-12 (5th Cir. 1983) (affirming dismissal of obstruction charges levied by IRS against tax protestor for filing

---

[4](...continued)
*United States v. Benson* , 941 F.2d 598, 604 (7th Cir. 1991); *United States v. Scop* , 846 F.2d 135 (2d Cir. 1988), *modified on other grounds* , 856 F.2d 5 (2d Cir. 1988); *United States v. Azure* , 801 F.2d 336, 340-41 (8th Cir. 1986); *United States v. Price* , 722 F.2d 88 (5th Cir. 1983).

complaint against the IRS, holding that the filing of "a factually accurate, non-fraudulent criminal complaint against federal agents" was protected by the First Amendment's right to petition for redress of grievances); *cf. United States v. Cooper*, 872 F.2d 1 (1st Cir. 1989) (rejecting ethical complaint against a criminal defense attorney for filing a motion to recuse the trial judge).[5] Indeed, virtually every tactic employed by a criminal defense lawyer to prevent or delay a "guilty" client from conviction could be characterized by an over-zealous prosecutor as "obstruction of justice." Fortunately, a defense attorney's role in the adversary system is constitutionally protected by the First and Sixth Amendments. *See generally Holt v. Virginia*, 381 U.S. 131, 136 (1965) ("The right to be heard must necessarily embody a right to file motions and pleadings essential to present claims and raise relevant issues.") (citations omitted).

Count 33 is fundamentally defective because, in effect, it seeks to criminalize as "obstruction" a permissible and arguably constitutionally required function of a criminal defense attorney – seeking sworn statements from potential witnesses. It was within the defense function, therefore, for Mr. Esformes' attorneys to seek from the Delgados sworn declarations memorializing the Delgados' public position, as espoused by them and their counsel, that they (and by inference Mr. Esformes), were all innocent. Indeed, prosecutors frequently use grand juries to do precisely the same

---

[5] For that reason, motions to dismiss indictments for violating the First Amendment, selective prosecution and "vindictiveness" are justiciable pretrial. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (attempted application of child pornography crimes to "virtual" depictions of children violated First Amendent); *United States v. Barner*, 441 F.3d 1310, 1322 (11th Cir. 2006) (remanding for evidentiary hearing on actual vindictiveness); *Jones v. White*, 992 F.3d 1548, 1572 (11th Cir. 1993) (evidentiary hearing on selective prosecution conducted where "defendant presents facts sufficient to raise a reasonable doubt about the prosecutor's motive"); *United States v. Bassford*, 812 F.3d 16, 19-20 (1st Cir. 1987) (in order for a defendant to be entitled to evidentiary hearing on his selective prosecution claim he "need allege only some facts (a) tending to show that he has been selectively prosecuted and (b) raising a reasonable doubt about the prosecutor's purpose").

thing.[6] Nor can it be a crime for a criminal defense attorney to anticipate that a witness who is saying one thing today may say something quite different tomorrow if pressured by agents or prosecutors. Mr. Esformes' counsel were entitled to lock in the Delgados into what the Delgados were willing to say today. *See Harrington v. United States*, 267 F. 97, 101 (8th Cir. 1920) (reversing an attorney's conviction for obstruction of justice for attempting to get a witness to sign a statement *contradicting* grand jury testimony that the witness had already given that conflicted with the statement). Indeed, such a strategy was expressly recognized *as legitimate* by the Eleventh Circuit:

> Suppose, for example, that Fainberg [here the Delgados] made proclamations of Almeida's [here Mr. Esformes'] innocence during the joint defense strategy sessions. Such hypothetical statements would have been inconsistent with the position Fainberg [the Delgados] maintained while on the witness stand [at a trial of Mr. Esformes] and might have revealed the existence of bias stemming from the Government's offer to advocate a reduction in Fainberg's [the Delgados'] sentence[s]. To be sure, evidence of a plea agreement might, standing alone, tend to show bias. But the existence of a plea agreement *in conjunction with an inconsistent story would be much more effective in establishing bias*. The defense might also have been able to point out inconsistencies between Fainberg's analyses of the tape recordings made during joint defense strategy sessions (e.g., identification of certain speakers) and those made during trial.

*United States v. Almeida*, 341 F.3d 1318, 1321 n. 8 (11th Cir. 2003) (emphasis added).[7]   The fact that

_____

[6] *See, e.g., In re Grand Jury Proceedings (McKay)*, 21 F.3d 1113 (9th Cir. 1994) (unpublished) (holding that at least pre-indictment, it was not improper for a prosecutor to summon a grand jury witness to "freez[e] his or her testimony for trial"); *United States v. McLaughlin*, 910 F. Supp. 1054 (E.D. Penn. 1995) ("The government does not abuse the grand jury process if, in addition to conducting a legitimate investigation, the government obtains additional evidence or freezes witnesses' testimony."), citing *In Re Grand Jury Matter*, 689 F. Supp. 454, 463 (E.D. Penn. 1987); *United States v. Shakur*, 560 F. Supp. 313, 318 (S.D.N.Y. 1983) (denying defendant's motion to dismiss indictment, holding that "[t]he government did not abuse the grand jury by attempting to freeze testimony"). *Cf. United States v. Fisher*, 455 F.2d 1101, 1104–05 (2d Cir.1972)(holding use of grand jury to "freeze" witness testimony *after the indictment was filed* was improper).

[7] *See also Appeal of Hughes*, 633 F.2d 282, 286-91 (3d Cir. 1980) (upholding work product claim by attorney who, during his representation of a target of a grand jury investigation, hired a private investigator to interview government witnesses, rejecting government's argument that no privilege existed because the interviews obstructed justice, observing that "[p]otential witnesses are not Government property" and recognizing that "[r]esentment of energetic trial preparation by defense (continued...)

an attorney's client assists counsel in securing a witness statement does not change the result. *See United States v. Brand*, 775 F.2d 1460, 1470 (11th Cir. 1985) (reversing convictions for obstruction of justice where defendant acted pursuant to counsel's strategy in seeking affidavits from customers stating that they were aware of altered odometers, and holding "the mere attempt to secure a statement from a potential witness falls short of even being within the outer limits of § 1503").

Here, the obstruction allegations in Count 33 likewise "fall[] short of even being within the outer limits of § 1503." *Brand*, 775 F.2d at 1470. For similar reasons, the Court should also bar the Prosecution Team from presenting evidence or making arguments to the jury to the effect that seeking the declarations was improper. It was not; it was instead constitutionally protected and all conversations about the subject matter were privileged under the JDA.

Indeed, the theory behind Count 33 is tantamount to an attack on the adversary system itself. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862 (1975). *See generally Ferri v. Ackerman*, 444 U.S. 193, 204 (1979) ("an indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation"). Defense counsel's role is not only constitutionally protected under the Sixth Amendment but also plays a "structural" role in the adversary system itself. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). *See also United States v. Cronic*, 466 U.S. 648, 653-54 (1984) ("An accused's right to be represented by counsel is a fundamental component of our criminal justice system.").

The "assistance of counsel" means "effective" assistance. *Strickland v. Washington* , 466 U.S. 668, 686 (1984). An essential component of providing "effective" representation is to interview

_____

[7](...continued)
counsel may lead to unfounded suspicion and baseless charges").

prosecution witnesses, not only to ascertain whether they possess exculpatory information, but also to obtain statements that might later prove useful for impeachment purposes. Indeed, the failure to do so can *itself* violate the Sixth Amendment.[8] Count 33 would, in effect, criminalize these very functions. Conduct that the adversarial system *requires* defense counsel to perform cannot simultaneously be criminalized as "obstruction."

## IV.    THE INVASION OF THE DEFENSE CAMP REQUIRES THE DISMISSAL OF THE ENTIRE INDICTMENT AND/OR THE SUPPRESSION OF EVIDENCE

Mr. Esformes seeks dismissal of the Second Superseding Indictment due to the unlawful recordings made at the Prosecution Team's behest by the Delgados when they spoke with Mr. Esformes and his counsel at a time when the Prosecution Team knew there was a Joint Defense Agreement ("JDA") between the "Delgado Defense Team" (Gabriel and Guillermo Delgado and their counsel) and the "Esformes Defense Team" (Mr. Esformes and his counsel, Michael Pasano and Marissel Descalzo). Alternatively, the Court should suppress the evidence obtained by the Prosecution Team in violation of the Fourth Amendment, Title III, and the joint defense privilege – including (1) all information that the Delgado Defense Team learned from the Esformes Defense Team during the course of their JDA (May 2014 through late September 2015) which the Delgados have conveyed to the Prosecution Team in violation of Mr. Esformes joint defense privilege; and (2) the trial testimony of Gabriel and Guillermo Delgado.

### A.    Dismissal

The Court should dismiss the indictment due to the systematic and long-standing violation

---

[8] *See, e.g., Goodwin v. Balkcom*, 684 F.2d 794 (11th Cir. 1982) (failure to interview prosecution witnesses constitutes ineffective assistance of counsel); *Caraway v. Beto*, 412 F.2d 636 (5th Cir. 1970) (failure to interview prosecution witnesses identified in indictment constitutes ineffective assistance of counsel); *Stanley v. Bartley*, 465 F.3d 810, 812 (7th Cir. 2006) (failure to interview prospective witness to obtain statements "[t]hat would have enabled a damaging cross-examination" described by court as "a shocking dereliction of professional duty....").

of Mr. Esformes joint defense privilege with the Delgado Defense Team. *See, e.g., United States v. Sabri*, 973 F. Supp. 134 (W.D.N.Y. 1996) (dismissing count of indictment where government manipulated the attorney-client relationship, including the taping of conferences with client); *United States v. Marshank*, 777 F. Supp. 1507 (N.D. Cal. 1991) (dismissing indictment where collaborated with the defense attorney to build a case against the defendant); *United States v. Omni Int'l. Corp.*, 634 F. Supp. 1414 (D. Md. 1986) (dismissing indictment, in part, where government agents manipulated a former secretary of an attorney into sharing attorney-client privileged information). The Prosecution Team's exploitation of the JDA is not a legitimate investigatory technique, nor is the use of informants under the pretense that their conversations with the target of the investigation are privileged. The court in *Sabri* soundly rejected that very argument:

> Finally, the government asserts that the use of undisclosed informants to consensually intercept conversations with suspects is a legitimate investigative technique, and thus, the government's conduct was not improper in this case. As a general matter, the use of informants is a prevalent, effective and legitimate investigative technique. However, this does not mean there are no limits as to how and when the technique is employed. *See United States v. Hammad*, 858 F.2d 834 (2d Cir.1988). Thus, the fact that the informant was the defendant's attorney, and that the attorney-client relationship was the vehicle used to aide in the informant's ability to obtain admissions from the defendant distinguishes this case from those cases in which the government legitimately enlists an informant to tape conversations with the defendant.

*Sabri*, 973 F. Supp. at 147. *Cf. United States v. Ofshe*, 817 F.2d 150, 1516 n. 6 & 1517 (11th Cir 1987) (declining to dismiss the indictment where the government wired defense attorney to record conversations with his client "without approval of the United States Attorney's Office or the United States District Court in Miami, Florida" for lack of demonstrable prejudice but characterizing the prosecutor's conduct as "reprehensible," his judgment as "questionable at best" and referring him to the Illinois bar for possible disciplinary action).

While dismissal of an indictment for a privilege violation may require a showing of

prejudice, *see United States v. Deluca*, No. 15-12-12033, 2016 WL 6211820 (11th Cir. Oct. 25,

2016), prejudice is established if privileged information was used "in any ... way" to the defendant's

"substantial detriment." *Weatherford v. Bursey*, 429 U.S. 545, 554 (1977). The requirement of

"substantial detriment" encompasses far more than simply the introduction of evidence at trial:

> The threat of significant harm required by *Weatherford* does not ... have to amount
> to "prejudice" in the sense of altering the actual outcome of the trial.... The
> prosecution makes a host of discretionary and judgmental decisions in preparing its
> case.  It would be virtually impossible for an appellant or a court to sort out how any
> particular piece of information in the possession of the prosecution was consciously
> or subconsciously factored into each of those decisions. Mere possession by the
> prosecution of otherwise confidential knowledge about the defenses strategy or
> position is sufficient in itself to establish detriment to the criminal defendant. Such
> information is "inherently detrimental, ... unfairly advantage[s] the prosecution, and
> threaten[s] to subvert the adversary system of justice."

*Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir. 1983), quoting *Weatherford*, 429 U.S. at 556.

Employing similar reasoning, the court in *United States v. Levy*, 577 F.2d 200 (3rd Cir.

1978), dismissed an indictment after finding that the defendant was prejudiced by governmental

interference with his right to counsel. In that case, the DEA recruited an informant who then posed

as a "defendant" and was represented by attorney Siegal.  Siegal also represented a real co-defendant,

Verna. Through his undercover role as Siegal's client, the informant learned "that the defense

strategy would be to concentrate" at trial on attacking "the credibility of two key government

witnesses." 577 F.2d at 204. The government also earned "the equally significant point that ... this

was the *only* likely defense strategy that the prosecution had to anticipate." *Id*. at 208 (emphasis in

original). The court held that co-defendant Verna was sufficiently prejudiced by the misconduct to

justify dismissing the indictment with prejudice.  As the court explained:

> The government's knowledge of this planned strategy would permit it not only to
> anticipate and counter such an attack on its witnesses' credibility, but also to select
> jurors who would be more receptive to the testimony of black witnesses against white
> ethnic defendants. While the significance of such benefits is, of course, speculative,
> such speculation is the inevitable consequence of the legal standard the district court

adopted.

*Id*. at 208. In concluding that dismissal of the indictment was the *only* appropriate remedy, the *Levy* court expressly rejected the government's suggestion that the misconduct could be cured "by some elaborate scheme, such as by bringing in new case agents and attorneys from distant places," because even if new attorneys and agents were brought on, "we would still have to speculate about the effects of the old case agents' discussions with key government witnesses."  *Id*. at 210. "More important, public confidence in the integrity of the attorney-client relationship would be ill-served by devices to isolate new government agents from information which is now in the public domain."

During the detention proceedings in this case, the Prosecution Team placed transcripts of the Delgados' taped conversations with Mr. Esformes (*and* his counsel) "in the public domain." *See* DE 119 (transcript of June 12, 2015).[9] And, as in *Levy*, the defendant has plainly been prejudiced by the government's misconduct. The transcript of the June 12, 2015, recording itself establishes that the Prosecution Team authorized the Delgados to record conversations with Mr. Esformes about the pending criminal investigation while they were parties to a written Joint Defense Agreement. The Eleventh Circuit has now affirmed this Court's detention order which relied on these privileged communications. And, the Prosecution Team intends to introduce the transcripts and the Delgados' testimony at trial. Such evidentiary uses of the privileged communications are alone enough to meet the defendant's burden of showing  prejudice. *See United States v. Terzado-Madruga*, 897 F.2d 1099, 1109-10 (11th Cir. 1990).

Suppression of the recordings would be an incomplete remedy insofar as members of the Prosecution Team have already made "a host of discretionary and judgmental decisions in preparing [their] case" based upon the information about defense strategies obtained through the Delgado's

---

[9] As discussed in the *Motion to Disqualify*, the Prosecution Team also attached a privileged document to one of its court filings.

surreptitious conduct. *Briggs*, 698 F.2d at 494-95. As in *Levy*, the government has learned critical information about Mr. Esformes' defenses, what facts counsel deemed important and what witnesses posed potential problems. The Prosecution Team has been using its knowledge of this privileged information since as far back as April 2015, when the Delgados retained a plea bargain attorney to covertly proffer to the Prosecution Team the cooperation that the Delgados could provide against Mr. Esformes. *See United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (recognizing that prejudice from government interference in attorney-client relationship "can result from the prosecution's use of confidential information pertaining to the defense plans and strategy, from government influence which destroys the defendant's confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage at trial").

### B.    Suppression of Evidence

In the alternative, the Court should suppress all evidence obtained by the Prosecution Team through the Delgados' spying, including the testimony of the Delgados themselves. As discussed in the accompanying Motion to Compel, that is precisely the remedy used by Judge Gayles in *United States v. Pisoni*, No. 15-20339-Cr-Gayles (S.D. Fla.), under remarkably similar circumstances. The Eleventh Circuit in *United States v. Terzado-Madruga*, 897 F.2d 1099 (11th Cir. 1990), also ordered suppression under analogous circumstances. *See also DeLuca*, 2016 WL 6211820, at *3 (recognizing that suppression is the primary remedy for privilege intrusions) (citations omitted).

### C.    Suppression Is Also Required Under the Fourth Amendment and Title III

The Prosecution Team's use of the Delgados to record Mr. Esformes under the ruse that the JDA was still in effect so as to shield their conversations as privileged also violated the Fourth Amendment and Title III. To invoke the protections of the Fourth Amendment, a defendant must show he had a legitimate expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351-52 (1967).

An expectation of privacy is legitimate if the defendant had a subjective expectation that his communications would be private, *and that expectation is one that society is prepared to recognize as reasonable. Kyllo v. United States*, 533 U.S. 27, 33 (2001); *Gennusa v. Canova*, 748 F.3d 1103, 1110 (11th Cir. 2014). Title III similarly prohibits the unauthorized recording of oral communications and comes with its own exclusionary rule. *See* 18 U.S.C. § 2515. Under Title III, a protected "oral communication" is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation [.]" 18 U.S.C. § 2510(2). Congress intended the definition of "oral communication" to parallel the reasonable expectation of privacy test used in the Fourth Amendment context. *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978); *see also Kee v. City of Rowlett*, 247 F.3d 206, 211 n.8 (5th Cir. 2001).

Both Fourth Amendment jurisprudence and Title III permit warrantless recordings of a suspect so long as there has been "consent" by one of the participants in the conversation. *See United States v. White*, 401 U.S. 745 (1971) (plurality opinion); *Hoffa v. United States*, 385 U.S. 293 (1966). The rationale for the one-party-consent exception is that society is not prepared to accept as "reasonable" an expectation of privacy in a conversation with most third parties:

> Our problem, in terms of the principles announced in *Katz*, is what expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by *Hoffa* and *Lewis*....
>
> ***Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his***. In terms of what his course will be, what he will or will not do or say, we are unpersuaded that he would distinguish between probably informers on the one hand

and probable informers with transmitters on the other. Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound....

401 U.S. at 752 (emphasis added). The *White* rationale, however, only applies to *some* third parties. In *Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014), the Eleventh Circuit held that a defendant had a reasonable expectation of privacy when conferring *with his lawyer* in a jailhouse interview room. For Fourth Amendment purposes, the Eleventh Circuit held, "[t]he status of the persons being recorded matters." 748 F.3d at 1112. Similarly, in *United States v. Ofshe*, 817 F.2d 1508, 1516 n. 6 (11th Cir. 1987), the Eleventh Circuit found that a prosecutor's conduct was "reprehensible" for asking the defendant's lawyer to record conversations with his client as part of the investigation and only denied relief because Ofshe suffered no prejudice.

In the instant case, Mr. Esformes was conferring with a member of the JDA. Indeed, as discussed in the *Motion to Disqualify*, during Delgado's meeting with Mr. Esformes on June 12, 2015, Guillermo Delgado complained extensively about Mr. Esformes' attorneys disclosing their concerns about the transportation services and charities to the Delgados' attorneys under the JDA. The Delgados then tried to convince Mr. Esformes to sign an exculpatory declaration for them. Mr. Esformes responded that he had "already signed an agreement to do [a] joint defense so that's the same thing, isn't it...." *See* Transcript, June 12, 2015 (emphasis added).[10] The Delgados said nothing to disavow Mr. Esformes of his well-founded belief that they were conferring under their "agreement to do [a] joint defense."

Like the attorney in *Ofshe*, the Delgados (at the Prosecution Team's behest) misled Mr. Esformes into believing that the Delgado and Esformes Defense Teams still shared common interests

---

[10] These excerpts are included in Exhibit 27 to Mr. Esformes' *Motion to Disqualify*.

which were adverse to the interests of the Prosecution Team. Under a JDA, even client-to-client communications *outside the presence of counsel* can be privileged, particularly when the clients are discussing matters approved by an attorney.[11] Hence, it was objectively reasonable for Mr. Esformes to believe that his conversations with the Delgados were privileged, where the express terms of the JDA required the Delgado Defense Team to withdraw from the JDA and notify the Esformes Defense Team when the teams no longer shared a common interest. That was true here, especially with respect to the conversations about the declarations which both the Delgados and Mr. Esformes knew had been approved by Mr. Esformes' attorney. Because courts, including the Eleventh Circuit, have recognized the validity of JDAs and the privilege they create, conversations about the declarations were privileged. Consequently, the one-party consent exception to Title III's warrant requirement was just as inapplicable here as it would have been had Mr. Esformes made the statements in the presence of any of the two teams' attorneys. Recording the conversations without a warrant, therefore, violated the Fourth Amendment and Title III. *See United States v. Renzi*, 722 F. Supp. 2d 1100, 1118 (D. Ariz. 2010) (intentional interception of attorney-client communications violated the Fourth Amendment and Title III, and warranted suppression of all wiretap evidence).

**V.    AT THE VERY LEAST, THE COURT SHOULD SEVER COUNTS 32 AND 33 UNDER FED. R. CRIM. P. 14 AND EXCLUDE THAT EVIDENCE FROM THE TRIAL ON THE REMAINING COUNTS UNDER FED. R. EVID. 403**

Alternatively, the Court should sever the obstruction counts – the counts that directly stem from the Prosecution Team's improper use of the JDA. If these counts (or even evidence of the allegations) remain, then Mr. Esformes may need to call his own lawyers as witnesses, as well as

---

[11] *See Crane Security Technologies, Inc. and Visual Physics, LLC v. Rolling Optics*, No. 14-12428-LTS, 2017 WL 470890 (D. Mass. Feb. 3, 2017); *Invista North America S.a.r.l. v. M&G USE Corp.*, No. 11lp-1007-SLR-CJB, 2013 WL 12171721 (D. Del. June 25, 2013); *Zitzka v. Village of Westmont*, No. 07 C 0949, 2009 WL 12346256 (N.D. Ill. May 13, 2009); *Beneficail Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212 (N.D. Ill. 2001); *IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc.*, No. 97 C 5827, 1999 WL 617842 (N.D. Ill. 1999).

the Delgados' attorneys and members of the Prosecution Team. He will also be entitled to introduce expert testimony on the nature of the adversary system, defense counsel's role in the system and the ethical and constitutional obligations of criminal defense counsel in providing effective assistance of counsel. Numerous courts have recognized the need for expert testimony in cases where an attorney's role in the system is at issue.  In legal malpractice actions, for example, expert testimony is routinely introduced to establish the standard of care and whether the attorney's conduct was proper.[12] In such cases, the expert explains what the attorney's duties are to his client and what might constitute a breach of that duty. As in medical malpractice cases, the expert witness on legal ethics and the functions of a defense attorney in the adversary system is deemed helpful to the jury, because the attorney's rights, duties and role as confidant and advocate have legal ramifications that are not necessarily obvious, apparent or viewed as legitimate to lay jurors.

In criminal cases, a defendant-lawyer's right to put on such testimony has constitutional dimensions.  In *United States v. Kelley*, 888 F.2d 732 (11th Cir. 1989), a criminal defense attorney was charged with participating in a drug conspiracy with his former clients.  Much of the evidence at trial involved Kelley's meetings and conversations with his clients in the course of representing them. At trial, Kelley sought to testify regarding his subjective "understanding of his professional obligations as an attorney, and how that understanding affected his conduct." 888 F.2d at 743. When the government objected to the testimony, trial counsel explained that "the defense was trying to establish that 'what he did in this case is permissible because he acted legitimately as a lawyer with clients.'" *Id*. The trial court, however, excluded the testimony as irrelevant. *Id.* Kelly was convicted,

---

[12] *See, e.g., Willage v. Law Offices of Wallace & Breslow, P.A.*, 415 So.2d 767 (Fla. 3d DCA 1982); *Urbanek v. Cohn*, 531 So.2d 427 (Fla. 4th DCA 1988) (per curiam) (Anstead, J., concurring). *See generally* Michael A. DiSabatino, Annotation, *Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney*, 14 A.L.R. 4th 170 (1982 & Supp. 1997).

but the Eleventh Circuit reversed, holding that "the excluded testimony was very relevant to his intent and state of mind regarding his dealings with both [former clients]"since Kelly's "primary defense" was that "he acted not with criminal intent but within the legitimate bounds of legal representation." *Id. See also United States v. Cavin*, 39 F.3d 1299 (5th Cir. 1994) (reversing attorney's conviction where the trial court excluded expert testimony designed to show that the attorney's subjective understanding of his responsibilities as a lawyer was objectively reasonable).

The Court can avoid the prejudice to Mr. Esformes – and codefendant Barcha, who also moved for a severance of the obstruction count (34) – by severing all the obstruction counts.

## CONCLUSION

For all of the forgoing reasons, the Court should dismiss the Second Superseding Indictment in whole or in part or, in the alternative, sever Counts 32 and 33 and exclude all evidence pertaining to those counts in a trial on the remaining counts.

## CERTIFICATION PURSUANT TO LOCAL RULE 88.9

Pursuant to the Local Rule 88.9, in a good faith effort to resolve the issues raised in the instant motion, undersigned counsel contacted opposing counsel who represented that the government opposes all forms of relief requested by this motion.

Certificate of Service

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on April 14, 2017, this pleading was electronically filed with the Clerk of Court using the CM/ECF and that this document is being served on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

**CARLTON FIELDS**
100 S.E. 2nd Street
4200 Miami Tower
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile: (305) 530-0055


By: ____s/Michael Pasano_____
     **MICHAEL PASANO**
     Florida Bar No. 0475947


**TACHE, BRONIS, CHRISTIONSON**
 **& DESCALZO, P.A.**
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Tel: (305) 537-9565


By: ____s/Marissel Descalzo_____
     **MARISSEL DESCALZO, ESQ.**
     Fla. Bar. No 669318

*Permanent Appearances for Philip Esformes*

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, FL  33131
Tel: (305) 371-6421  Fax: (305) 358-2006


By: ____*/s/ Roy Black*_____
     **ROY BLACK, ESQ**.
     Fla. Bar No. 126088
     **HOWARD SREBNICK, ESQ**.
     Fla. Bar No. 919063
     **JACKIE PERCZEK, ESQ**.
     Fla. Bar No. 0042201
     **G. RICHARD STRAFER, ESQ.**
     Fla. Bar No. 389935

*Limited Appearances for Philip Esformes*