**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-CR-20549-LENARD/OTAZO-REYES (s)(s)**

**UNITED STATES OF AMERICA**

**vs.**

**PHILIP ESFORMES,**
**ODETTE BARCHA, and**
**ARNALDO CARMOUZE,**

     **Defendants.**
_____/

**RESPONSE BY THE UNITED STATES IN OPPOSITION TO DEFENDANT
ESFORMES' CONSOLIDATED MOTIONS TO DISMISS THE SECOND
SUPERSEDING INDICTMENT IN WHOLE OR IN PART; SUPRESS EVIDENCE
AND/OR SEVER COUNTS 32 & 33; AND EXCLUDE EVIDENCE OF OBSTRUCTION**

  The United States, by and through undersigned counsel, hereby files this response in

opposition to Defendant Esformes' Consolidated Motions to Dismiss the Second Superseding

Indictment in Whole or in Part, Suppress Evidence and/or Sever Counts 32 & 33 and Exclude the

Obstruction Evidence (the "Motions") (DE 278).  For the reasons set forth herein, the Motions

should be denied in their entirety.

**BACKGROUND**

  **1.  Defendant's Conduct**

  For more than a decade, Defendant masterminded and executed sophisticated health care

fraud, kickback and money laundering conspiracies through a network of skilled nursing and

assisted living facilities that he owned or operated (the "Esformes Network").  Defendant and his

co-conspirators not only caused Esformes Network facilities to submit false and fraudulent claims

to Medicare and Medicaid; they also sold access to the Medicare and Medicaid beneficiaries who

resided in these facilities, soliciting and extracting kickbacks from pharmacies, home health agencies, and other providers that then illegally billed these government-sponsored programs for services purportedly provided to Esformes Network beneficiaries. Gabriel and Guillermo Delgado (collectively, the "Delgado Brothers") were Defendant's lieutenants and intermediaries. They negotiated kickback payments with other co-conspirators and funneled the illicit money to themselves and to Defendant.

### 2. The Delgado Brothers

On May 12, 2014, the Delgado Brothers were arrested, and subsequently charged in a superseding indictment. *See* 14-CR-20359-JEM. The superseding indictment, which was returned on October 9, 2014, charged the Delgado Brothers with, *inter alia*, conspiracy to pay and receive health care kickbacks, in violation of Title 18, United States Code, Section 371 (the "October 2014 Indictment"). *See id.* It also alleged that the Delgado Brothers and their co-conspirators, known and unknown to the grand jury, "pa[id] and receiv[ed] kickbacks and bribes to ensure that Medicare and Medicaid beneficiaries would serve as patients at the Morales Pharmacies." Both Delgados ultimately pleaded guilty.

In the stipulated factual basis in support of Gabriel Delgado's September 30, 2015 guilty plea, he agreed that:

> Beginning in or around September 2006, [Gabriel] DELGADO and co-defendant Guillermo Delgado entered into sham "consulting" agreements with Jose Carlos Morales, the co-owner of several defunct South Florida pharmacies and durable equipment providers, for the purpose of facilitating a kickback and money laundering scheme whereby Morales paid kickbacks to the Delgado Brothers in exchange for a guaranteed stream of beneficiaries which could later be used to submit claims to Medicare on behalf of the Morales Pharmacies.

(*Id.* at DE 211:2 (parentheticals omitted).)   Guillermo Delgado, while charged with the same kickback conspiracy, pleaded guilty to one count of conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Section 846.

At the time they signed their respective plea agreements, the Delgado Brothers informed the government that Defendant was engaging in obstruction of justice and witness tampering. Specifically, they related that Defendant had planned to fund Guillermo Delgado's flight out of the country to avoid trial before United States District Court Judge Jose E. Martinez, predicting that this obstruction would allow Gabriel Delgado to "blame the empty chair" at trial and escape conviction.  In addition, Defendant was trying to obtain fraudulent declarations from each of the Delgado Brothers that stated, *inter alia*:

- "I have never known Philip Esformes to engage in any improper conduct" (*id.* at DE 278:2); and

- "I have never known Philip Esformes to engage in any illegal conduct" (*id.*).

After signing their plea agreements, the Delgado Brothers began making consensual recordings at the direction of the government.[1]  The recordings make clear that Defendant attempted to coerce the Delgado Brothers into signing false declarations behind their own attorneys' backs—*after* their attorneys refused to let them sign these documents—a point that Defendant concedes.  (*See* DE 275:24 (June 8, 2015, 11:37 a.m. email from Pasano to Moscowitzes stating:  "We have gone ahead and drafted a declaration for each of your clients."); DE 275:27 (June 8, 2015, 10:41 p.m. email from Moscowitzes to Pasano stating:  "[w]e don't agree, or consent, to our clients signing declarations."); DE 119:44 (when Defendant provides the false

---

[1] As discussed in more detail in its Opposition to Defendant's Motion to Disqualify the Prosecution Team for Systematic Violations of the Attorney-Client, Work Product and Joint Defense Privileges, the government engaged a filter attorney to supervise these recordings.  The fact section of that response is incorporated here.

declarations to the Delgado Brothers for signature he is recorded on June 21, 2015 saying:  "Your attorneys won't know about it.").)  On June 12, 2015, Defendant obtained signed copies of the false declarations from the Delgado Brothers on recordings monitored by the FBI.

During the conversations regarding the declarations captured on recordings, the Delgado Brothers and Defendant discussed the possibility of a superseding indictment including Defendant for his participation in the scheme.  *See* Ex. A. (Guillermo Delgado expressed concern about signing the false affidavits to Defendant and Gabriel Delgado, asking what would happen if "Philip gets superseded and he turns around and says the truth about this.").  Recorded conversations also confirm that Defendant tried to prevent the Delgado Brothers from cooperating against him by funding Guillermo Delgado's flight from the country.  Defendant is recorded telling Guillermo Delgado to flee to a country without an extradition treaty with the United States and warning him: "[y]ou can't screw up and you can't come back."  (DE 119:52.)

### 3.  The Charges Against Defendant

On July 22, 2016, a federal grand jury sitting in Miami, Florida, returned a 28-count indictment charging Philip Esformes, Arnaldo Carmouze and Odette Barcha with conspiracy to commit health care and wire fraud; conspiracy to pay and receive kickbacks; and conspiracy to commit money laundering.  The indictment also charged them with various substantive counts of health care fraud, money laundering and kickbacks.  On February 14, 2017, a grand jury returned a 34-count second superseding indictment (the "Second Superseding Indictment"), which included certain additional charges.

Most pertinent to the present Motions are the Manner and Means alleged in paragraph 21 of Count 1 ("[Defendant] also received kickbacks prior to, and after, signing each of these certifications for access to patients residing in those SNFs . . . and other facilities in the Esformes

4

Network."); the allegations in Count 6 (Conspiracy to Pay and Receive Health Care Kickbacks); and the allegations in Counts 32 and 33 (Obstruction of Justice).   (*See* DE 200.)

Count 6 of the Second Superseding Indictment alleges a wide-ranging kickback conspiracy to pay and receive kickbacks in violation of Title 18, United States Code, Section 371. Specifically, the indictment alleges that Esformes and his co-conspirators unlawfully enriched themselves by "offering, paying, soliciting and receiving kickbacks and bribes to ensure Medicare and Medicaid beneficiaries would serve as patients at the Esformes Network and co-conspirator providers."  (DE 200:19.)

Counts 32 and 33 each charge Defendant with obstruction of justice, in violation of Title 18, United States Code, Sections 1503 and 2.  Specifically, Count 32 charges Defendant with funding Guillermo Delgado's flight from the United States, while Count 33 charges him with creating false declarations for the Delgado Brothers to sign.

## ARGUMENT

### I.     COUNTS 32 AND 33 ARE PROPERLY JOINED.

#### A.  Legal Standard

Federal Rule of Criminal Procedure 8(a) governs joinder of offenses against a defendant. It permits such joinder if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  In *United States v. Dominguez*, 226 F.3d 1235, 1238-42 (11th Cir. 2000), the Eleventh Circuit set forth the procedure to be used in determining whether initial joinder is proper under Rule 8.  Generally, the court must first look to the face of the indictment.  If the indictment contains allegations that demonstrate that the offenses arise from transactions temporally or factually connected together, or that are parts of a common scheme, the court may

rely upon the indictment to determine that initial joinder is proper.  If, however, the face of the indictment does not reflect the propriety of joinder, the court may consider other evidence proffered by the government.  The grant or denial of a defense motion to sever counts for trial lies within the discretion of the trial court.  *United States v. Benz*, 740 F.2d 903, 911 (11th Cir. 1984).

It is well-settled that where joinder is proper under Rule 8, a severance under Rule 14 is warranted only where a defendant can make a showing of "specific and compelling prejudice" which would render the jury incapable of independently evaluating the evidence as to each offense.  *Zafro v. United States*, 506 U.S. 534 (1993); *United States v. Hernandez*, 921 F.2d 1569, 1579-80 (11th Cir. 1991).  Indeed, "[t]o warrant severance under the rule, the defendant bears a heavy burden in demonstrating clear and compelling prejudice from the inclusion of the count in question which could not be alleviated by the trial court and that he was unable to obtain a fair trial."  *United States v. Kabbaby*, 672 F.2d 857, 861 (11th Cir. 1982) (internal quotations and citation omitted).

### B.   Defendant Endeavored to Obstruct The Prosecution of A Kickback Conspiracy In Which He Participated.

Counts 32 and 33 of the Second Superseding Indictment charge Defendant with obstructing justice, in violation of 18 U.S.C. § 1503.  Count 32 alleges that Defendant sought to fund Guillermo Delgado's flight from the United States to avoid trial.  (DE 200:32.)  Count 33 alleges that Defendant created false declarations for the Delgado Brothers, to be used in case number 14-cr-20359, pending before United States District Judge Jose E. Martinez.  (*Id.*)  These charges arose from Defendant's endeavors to conceal his ongoing involvement in the criminal conspiracy charged in both the October 2014 Indictment and ultimately, the Second Superseding Indictment in this case, as well as to avoid detection from law enforcement, so that his conspiracy could continue.

Defendant argues that Counts 32 and 33 are not properly joined because (1) there is no "nexus" between the case against the Delgado Brothers and the instant case against Defendant,

emphasizing the fact that there were some Title 21 charges in the Delgados' case (without making any mention of the kickback charges); and (2) he claims that the false declarations were "opinions" rather than facts and thus could not have been "used."[2] (DE 278:4-5)  His arguments are meritless.

Defendant was an unnamed co-conspirator in the kickback conspiracy charged in the October 2014 Indictment, about which his motion is silent.  Instead, the Defendant myopically focuses on the fact that Guillermo Delgado pleaded to a drug offense charged under 21 U.S.C. § 846, glossing over the fact that Guillermo Delgado was also charged for conspiring to pay and receive kickbacks with Defendant in that same indictment.  Indeed, the Delgado Brothers were charged with conspiracy to pay and receive kickbacks for providing access to the Medicare patients controlled by Defendant, and for funneling kickback proceeds to him.  Defendant was not only a participant, but in fact, the principal beneficiary of this scheme.  The kickback conspiracy Gabriel Delgado pleaded guilty to, and with which Guillermo Delgado was charged, is a portion of the *same* criminal conspiracy with which Defendant is charged in the Second Superseding Indictment. Additionally, "[i]t is clear from a plain reading of the statute that an individual need not be a party to the judicial proceeding in question in order to violate section 1503."  *United States v. Barfield*, 999 F.2d 1520, 1524 (11th Cir. 1993).

Contrary to his present claims, this tight factual nexus was readily apparent to Defendant in June of 2015, when he sought the false declarations.  In a conversation recorded by Guillermo Delgado on June 12, 2015, Defendant repeatedly discussed the possibility of being added to the

---

[2]  In claiming that these declarations "could not be used" the defendant is taking a position that is inconsistent with other arguments he makes in his brief.  In one section of this brief, he compares securing the signing of a declaration to a prosecutor locking in testimony in the grand jury (DE 278:9).  In another section of his brief, he argues that it could not have been "used" at all (DE 278:8).  Certainly, there is no dispute that the false declarations would have been useful to impeach the Delgado Brothers if they cooperated with the government and testified against Defendant. *See* Fed. R. Evid. 613(b)

indictment that was then pending against the Delgado Brothers, speculating that the false declarations would be useful if the indictment is superseded. Given the factual nexus, joinder of Counts 32 and 33 is therefore proper—particularly because Defendant has failed to allege a theory of how he is or will be prejudiced.

Even assuming, *arguendo*, that these obstruction offenses did not arise at the same time or out of the same series of acts or transaction as the other charged conduct, Rule 8(a) still permits joinder. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). Indeed, courts routinely decline to sever obstruction counts from underlying offenses and permit joinder of offenses that are more disparate than those alleged here. *See, e.g.*, *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993) (affirming joinder of perjury and aiding and abetting counts with charges of false and fraudulent statements); *United States v. Lunceford*, No. 08-00393, 2009 WL 2486917, at *2 (S.D. Ala. Aug. 12, 2009) (unpublished) (permitting joinder of obstruction counts with arson counts); *United States v. Fernandez*, No. 08-20704-CR, 2008 WL 5101003, at *2 (S.D. Fla. Dec. 1, 2008) (unpublished) (permitting joinder of fraud offenses with narcotics offenses).

Joinder is proper in such cases, in part, because evidence of obstruction is admissible as, among other things, evidence of knowledge, intent, or consciousness of guilt in cases involving the underlying conduct, and vice versa. Here, Defendant's involvement in the health care fraud and kickback offenses (Counts 1 and 6) would be admissible in a trial on the obstruction charges to show Defendant's motive and intent to obstruct justice (Counts 32 and 33). Likewise, evidence that Defendant obstructed justice would be admissible in a trial on the health care fraud and kickback offenses to show consciousness of guilt. *See Walser*, 3 F.3d at 386 (affirming district court's refusal to sever a perjury and aiding and abetting count from charges of false and fraudulent statements on the ground that the falsehoods and the need to cover up the falsehoods led to the

perjury charge); *Lunceford*, 2008 WL 5101003, at *3 (evidence of defendant's involvement in underlying arson charge admissible in a trial on the obstruction charges to show motive and intent to engage in obstruction, and evidence of defendant's obstruction conduct admissible in a trial on the arson charge to show consciousness of guilt as to the fire).  Finally, Defendant has failed to articulate a theory of how he is prejudiced, let alone demonstrate compelling prejudice; accordingly, the Court should find that Counts 32 and 33 are properly joined and deny his motion to sever.

## II.    COUNT 33 STATES A CLAIM.

### A.  The Second Superseding Indictment Properly Alleges that Defendant Sought The False Declarations to Obstruct Justice.

Defendant next argues that Count 33 is not only misjoined, but also fails to state an offense because, he claims, as a factual matter, Defendant solicited lay *opinions* rather than false *statements*, and opinions, as a matter of law, cannot form the basis of a perjury conviction (DE 278:21-22).  Contrary to his assertions, it is of no moment whether Defendant solicited false opinions or false statements, or whether, ultimately, he prevailed in his efforts to undermine the government's prosecution of his co-conspirators' case or his own.  The relevant point is that the Second Superseding Indictment alleges that Defendant created documents for his co-conspirators to sign that, he believed, could undermine—and in fact had a realistic chance of undermining—a pending prosecution brought by the United States; no more is needed.

Section 1503 has an expansive reach; it prohibits "all corrupt conduct capable of producing an effect that prevents justice from being duly administered, regardless of the means employed." *United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir. 1984) (affirming district court's denial of motion to dismiss indictment for failure to allege violation of 18 U.S.C. § 1503).  The essential elements of this type of obstruction offense are that the defendant:  "(1) corruptly or by threats, (2) endeavored, (3) to influence, obstruct, or impede the due administration of justice."  *United States*

*v. Davis*, -- F.3d --, No. 15-13241, 2017 WL 1405210, at *8 (11th Cir. Apr. 20, 2017) (citations omitted). It is well established that "a section 1503 offense is complete when one corruptly *endeavors* to obstruct or impede the due administration of justice; the prosecution need not prove that the due administration of justice was actually obstructed or impeded." *Silverman*, 745 F.2d at 1395 (emphasis in original) (citing *Osborn v. United States*, 385 U.S. 323, 333 (1966); *United States v. Russell*, 255 U.S. 138, 143 (1921)); *accord Davis*, 2017 WL 1405210, at *11. Furthermore, "endeavor" denotes a lesser threshold of purposeful activity than "attempt." *See United States v. Thomas*, 916 F.2d 647, (11th Cir. 1990). The United States construes Defendant's instant attack as targeting the second and third elements: *i.e.*, he questions the adequacy of the government's allegations that he endeavored to have the Delgados take any action to influence, obstruct or impede the due administration of justice, since "opinions" lack capacity to influence.

In relevant part, the Second Superseding Indictment alleges that Defendant:

> did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due administration of justice by creating false affidavits for Guillermo and Gabriel Delgado, stating that PHILIP ESFORMES was not involved in the commission of health care fraud, to be used in the proceeding, *United States v. Guillermo Delgado et al.*, Case No. 14-CR-20359-Martinez . . . In violation of Title 18, United States Code, Sections 1503 and 2.

(DE 200:32). "The validity of the indictment . . . can only be determined by an examination of its specific language, taking account of it as a whole in the context of its statutory background," and the inquiry is not "whether the indictment could have been framed in a more satisfactory manner," but rather, "whether it conforms to minimal constitutional standards." *United States v. Haas*, 583 F.2d 216, 219 (5th Cir. 1978); *accord Silverman*, 745 F.2d at 1392.

At bottom, Count 33 of the Second Superseding Indictment alleges that Defendant created declarations for his co-conspirators—the Delgados—to sign *after* they had been indicted as a result of their participation in criminal conduct with Defendant, and that the declarations erroneously

stated that Defendant was uninvolved in health care fraud. Regardless of whether they contain false *statements* or false *opinions*, the natural and probable consequence, if not the desired consequence, of creating such declarations would be to, among other things, commit the Delgados to a concocted, self-serving story—one in which Defendant was an outsider, rather than a ringleader of the kickback conspiracy. Thus, if proven, Defendant's alleged conduct would "plainly constitute[] an 'endeavor' for the purpose of 18 U.S.C. § 1503 (1976)." *Silverman*, 745 F.2d at 1393.

These declarations could have also, for example, prevented the government from adding charges against Defendant in a superseding indictment with the Delgado Brothers, a possibility of which Defendant was aware. As Defendant well knew, if called to testify, the Delgado Brothers could make statements inculpating him or otherwise adverse to his interests; indeed, part of their own trial defense could have involved blaming Defendant. Thus, the declarations—even if never introduced into evidence at trial—could have undermined justice by discouraging the Delgado Brothers from testifying in a manner inconsistent with the declarations, or in the alternative, provide fodder for impeachment during cross-examination, countering the effect of their testimony inculpating Defendant. *See, e.g.*, *United States v. Fields*, 838 F.2d 1571, 1575 (11th Cir. 1988) (holding that false statement need not actually be used in court or delivered to court officer to satisfy "endeavor" element of 1503). The declarations could have even conceivably discouraged the Delgado Brothers from agreeing to sign any factual proffer in support of their own guilty pleas in which they admitted to conspiring with Defendant to commit health care fraud. All of these scenarios amount to obstruction, and none depend on the declarations containing statements versus

opinion.[3]   Hence, because the Second Superseding Indictment "conforms to minimum constitutional standards," *Haas*, 583 F.2d at 219, and adequately alleges the necessary elements of a section 1503 offense, Defendant's arguments should be rejected and his motion, denied.

In any event, the Eleventh Circuit's holding in *Fields*, which involved an analogous factual situation, provides further reason to dismiss Defendant's challenge.   There, Fields and a co-defendant were both indicted on firearms charges; Fields asked his co-defendant to fall on his sword and take full responsibility for the crime, thereby exculpating Fields entirely.   To that end, Fields convinced his co-defendant to go to a lawyer and give a false sworn statement "to the effect that Fields was not involved."   Fields' co-defendant then cooperated against him and informed the government about Fields' role in obtaining the false sworn statement.   Ultimately, the Court held that it was of no moment that the false sworn statement was never actually used in a judicial proceeding; "its existence in combination with the circumstances of its existence made it . . . likely that the statement would have been produced in court and that justice would be obstructed."   *See Fields*, 838 F.2d at 1573-75; *accord United States v. Barfield*, 999 F.2d 1520, 1524–26 (11th Cir. 1993) (reversing judgment of acquittal and reinstating jury verdict for section 1503 conviction; false statement at issue was that another co-conspirator was uninvolved and innocent).   So too here, as in *Fields*, the statements at issue are, in sum and substance, merely denials of Defendant's involvement in criminal activity.   Not unlike the false declarations themselves, Defendant's decision to cast the declarations denying his guilt as opinions amounts to another self-serving legal fiction.

---

[3] Moreover, Defendant's emphasis on a perjury framework (DE 278:6, citing *United States v. Endo*, 635 F.2d 321, 323 (4th Cir. 1980)), in which the fact/opinion distinction may conceivably matter, is misplaced.   The allegation here is not that Defendant impeded a perjury prosecution; rather, that he attempted to thwart the government's prosecution of a conspiracy in which he participated.

### B.  The Defendant Endeavored To Obstruct Case No. 14-CR-20359.

Defendant asserts that because the government could not "use" the declarations in the Delgado case, Count 33 fails to state an offense.  As discussed *supra*, Defendant had a different understanding at the time he endeavored to obtain the declarations.  The Delgado Brothers were each charged with conspiracy to pay and receive kickbacks for providing a population of Medicare beneficiaries to Jose Morales, so that he could submit claims to Medicare for prescription medications purportedly provided to these patients.  Defendant knew full well that he was an unnamed co-conspirator in the kickback count in the October 2014 Indictment.  Indeed, *he* was splitting the kickback payments paid by Morales, in return for, among other things, providing access to a patient population *he* controlled.  Moreover, as a matter of law, the declarations need not actually be used in court in order to constitute obstruction, and it is significant that Defendant succeeded in obtaining signatures on the self-serving documents he created for the Delgados. *Fields*, 838 F.2d at 1575 (distinguishing analysis in *United States v. Brand*, 775 F.2d 1460, 1468 (11th Cir. 1985) as relying upon the non-existence of a false statement).

The declarations had a clear capacity to influence the outcome of the Delgado Brothers' case, despite Defendant's attempts to characterize them as immaterial.  (DE 278:7-8.) Defendant's obstruction was intended to prevent—and conceivably, could have prevented—the Delgado Brothers from cooperating against him in the event that he was added to the charged kickback conspiracy in a superseding indictment, a risk of which he was plainly aware in light of the recorded statement that he was concerned the October 2014 Indictment "gets superseded."  The obstruction statute was "drafted with an eye to 'the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.'"  *United States v. Salum*, 257 F. App'x 225, 229 (11th Cir. 2007)

(unpublished) (citing *United States v. London*, 714 F.2d 1558, 1566-1567 (11th Cir. 1983)). Defendant should not be permitted to escape liability for his obstructive conduct by construing the statute with which he is charged in an overly narrow manner unsupported by the law.

### C.  Defendant Would Not Be Prejudiced By Calling His Attorneys As Witnesses.

Defendant further argues that Counts 32 and 33 should be severed because he may call certain of his attorneys as witnesses at trial.  Defendant, however, does not articulate a theory as to how he would suffer prejudice by raising this advice of counsel defense.  Nor could he.  In its Motion for Hearing Regarding Potential Conflict of Interest, filed on August 22, 2016—more than one year before the current trial date—the government alerted Defendant that defense attorneys Michael Pasano and Marissel Descalzo "may become necessary witnesses at trial."  (DE: 85:1.)  On April 7, 2017, the government filed a motion requesting timely notification of an advice of counsel defense, alerting the Court to its "good faith belief that Defendant Esformes may rely on an advice of counsel defense."  (DE. 263:6.)  Defendant would certainly not be prejudiced by asserting this affirmative defense, and because of early issue-spotting by counsel on both sides, Defendant has engaged a second set of attorneys (Black, Srebnick, Kornspan & Stumpf, P.A.), who have conducted nearly all of the discovery conferences in this case.  At bottom, Defendant would suffer no prejudice by availing himself to an affirmative defense he is able to pursue at his own discretion.

### III.  COUNT 33 IS CONSTITUTIONAL AS APPLIED.

Defendant's constitutional challenge likewise fails.  Count 33 charges conduct that falls squarely within the ambit of conduct criminalized pursuant to Title 18, United States Code, Section 1503.  *See Fields*, 838 F.2d 1571 at 1757; *see also Barfield*, 999 F.2d at 1523.

Defendant's argument, which is that obtaining declarations is generally a permissible tactic by a criminal defense attorney, is beside the point.  (DE 278:9.)  The Second Superseding

Indictment charges Defendant, not any one of his attorneys, with committing crimes.  Moreover, there is simply no support in the law for the proposition that knowingly obtaining false sworn statements for the purpose of diminishing the value of government cooperators is a constitutionally protected trial tactic.[4]

Moreover, because Title 18, United States Code, Section 1503 requires that a defendant act "corruptly, or by threats or force," there is little risk that this statute could be construed to criminalize benign conduct.  *Barfield*, 999 F.2d at 1525 ("The 'corrupt' requirement—which may also be described as the knowing, intentional or willful requirement—acts as a staunch barrier against prosecutorial overreaching and improper expansion of section 1503."); *see also Fields*, 838 F.2d at 1575 (construing *Brand*, on which Defendant relies, narrowly).

## IV.   THERE WAS NO INTRUSION INTO A LEGALLY COGNIZABLE DEFENSE CAMP.

There is no privilege to commit criminal conduct.  Defendant seeks dismissal of the Second Superseding Indictment because, he claims, the recordings obtained by the Delgado Brothers in June 2015 constitute an "intrusion into the defense camp."  The recordings themselves make clear, however, that this is not what happened.  Indeed, the recordings capture Defendant's efforts to escape prosecution by engaging in criminal conduct to prevent the Delgado Brothers from cooperating against him.  Moreover, to the extent that Defendant is asserting a Sixth Amendment violation, any such challenge must be denied as the Sixth Amendment right to counsel attaches at indictment, not before.[5]  At the very most, then, Defendant is alleging violation of the attorney-

---

[4] Defendant analogizes a defense attorney obtaining false declarations to a prosecutor "freez[ing]" testimony in grand jury.  This analogy simply does not describe what happened in this case.  Here, Defendant's actions are the functional equivalent of a prosecutor purposefully soliciting *false* testimony to obtain an indictment to suit his or her personal motives.

[5] *See, e.g.*, *Texas v. Cobb*, 532 U.S. 162 (2001); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

client privilege and/or the Fifth Amendment.  Under any of these frameworks, however, here, the acquisition and use of the recordings provides no basis for dismissal of the indictment nor suppression of the recordings.  Accordingly, this request, too, merits denial.[6]

### A.  Legal Standard

For the government's improper acquisition of privileged communications "[t]o constitute a [Fifth Amendment] violation[,] the law enforcement technique [at issue] must be so outrageous that it is fundamentally unfair and 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'"  *United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987) (quoting *United States v. Russell*, 411 U.S. 423, 432 (1973)).  This doctrine "is to be invoked only in the rarest and most outrageous of circumstances."  *Id*. (internal quotation marks omitted) (government's use of a criminal defense attorney as an informant against defendant did not rise to the level of "shocking to the universal sense of justice," where defendant suffered no prejudice). *United States v. Morrison*, 449 U.S. 361, 365-66 (1981), and its progeny require, in the first instance, a finding of prejudice in each particular case.  Mere possession of allegedly privileged information fails to suffice; actual prejudice is required.  The holding of *Morrison*, moreover, has been expressly adopted in this Circuit by *United States v. Melvin*, 650 F.2d 641, 644 (5th Cir. Fla. 1981), and *United States v. Bell*, 776 F.2d 965, 972 (11th Cir. 1985); *see also Bank of Nova Scotia*, 487 U.S. 250, 256 (U.S. 1988) ("[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant."). [7]

---

[6] The government responded to Defendant's voluminous misconduct allegations in its Opposition to Defendant's Motion to Disqualify the Prosecution Team for Systematic Violations of the Attorney-Client, Work Product and Joint Defense Privileges.

[7] Here, the context was pre-indictment; no privileged information, let alone privileged information regarding trial strategy, was obtained; and there is no prejudice.  Defendant relies on various factually distinguishable and non-binding precedents, including, in particular, the Third Circuit's

**B.  Recordings Obtained By The Delgado Brothers Are Not Subject to The Attorney-Client Privilege.**

Defendant asserts that the communications captured on recordings were protected by the Joint Defense Agreement ("JDA"); however, because Defendant's conversations with the Delgado Brothers were in furtherance of ongoing crimes, there is no basis in law to assert privilege over such communications.  *See United States v. Noriega*, 917 F. 2d 1543, 1550-1551 (11th Cir. 1998) (privilege does not cover conduct by attorneys and clients or communications between them which were made in furtherance of fraud); *see also In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1228 (11th Cir. 1987) ("Communications made in connection with legal assistance related to ongoing or intended criminal or fraudulent activity are not privileged regardless of their content.").

---

1978 decision in *United States v. Levy* and the D.C. Circuit's 1983 decision in *Briggs v. Goodwin* (*see* DE 278:12-16), without noting, among other things, the Eleventh Circuit's position in *Melvin* and *Bell* or the extent of the split between other circuits on (1) what constitutes evidence of prejudice and (2) who bears the burden of showing prejudice, the government or the defendant, in the context of an alleged Sixth Amendment violation.  *See, e.g.*, *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir. 1984) (acknowledging Circuit split between Third and D.C. Circuits and Ninth, taking a middle position on the issue of what showing is needed, and ultimately finding no Sixth Amendment violation because defendant was not prejudiced); *see also, e.g.*, *United States v. Collins*, 927 F.2d 605 (6th Cir. 1991) (distinguishing *Levy* and *Briggs* and holding that, "[e]ven where there is an intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted.").  To the extent that this Court is inclined to follow Defendant's invitation to adopt D.C. Circuit precedent, it should nonetheless reject Defendant's attempt to use language from *Briggs*, 698 F.2d at 494-95, to argue that "mere possession" of privileged information can suffice to show prejudice, because (1) it remains the case that the context of *Briggs* is entirely distinguishable and (2) subsequent to *Briggs*, the D.C. Circuit held that "an intrusion into the attorney-client privilege, standing alone, does not *per se* violate the Constitution.  If the government demonstrates that no harm, that is, no privileged information regarding trial strategy or otherwise has been communicated to the prosecutors and used to the defendants' detriment, there is no constitutional violation."  *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997).  In sum, for many reasons, the precedents on which Defendant relies fail to compel a conclusion in his favor.

Further, the recordings reveal that Defendant's conversations with the Delgado Brothers were not at the direction of an attorney or in furtherance of a common defense, so are not communications of the type that would be protected by a JDA. *See Pensacola Firefighters' Relief Pension Fund Board of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 2011 WL 3512180 at *6 (N.D. Fl. July 7, 2011) (unpublished) ("To assert the privilege, the party must show: (1) an agreement (though not necessarily in writing) to cooperate through a common enterprise towards *an identical legal strategy*; (2) the communications were given in confidence, and the client reasonably understood this; (3) the joint strategy was more than '*merely the impression of one side*.'") (emphasis added); *see also Guarantee Insurance Co. v. Heffernan Ins. Brokers, Inc*., 300 F.R.D. 590, 596 (S.D.F.L. 2014) (holding that litigants with a common interest may exchange privileged information without losing the privilege so long as certain requirements are met). The recordings make clear that the government targeted Defendant's ongoing illegal activity, and that Defendant was working unilaterally to avoid prosecution as discussed *supra*, not working in furtherance of a legitimate common defense at the instruction of his attorneys.

**C. The Government Did Not Act Outrageously.**

The Government engaged a filter attorney to supervise the recordings obtained by the Delgado Brothers in June, 2015. Far from outrageous conduct that could warrant dismissal of an indictment, here, the government acted cautiously and took steps to safeguard Defendant's rights. *See Ofshe*, 817 F.2d 1508 at 1516. The filter attorney ultimately submitted the recordings for *in camera* review by United States District Court Judge Ursula M. Ungaro, before turning the tapes over to the prosecution team, consistent with the court's order. Defendant cites no authority supporting dismissal of an indictment in a case where, as here, the government acted cautiously, ethically and appropriately.

18

**D.  The Recordings Obtained By The Delgado Brothers Should Not Be Suppressed.**

Defendant further argues that the recordings obtained by the Delgado Brothers should be suppressed pursuant to the Fourth Amendment and Title III because Defendant had a subjective expectation of privacy in his captured communications, and that expectation is one that society is prepared to recognize as reasonable.  *See Kyllo v. United States*, 533 U.S. 27, 33 (2001).  This argument disregards the content of the conversations between the Delgado Brothers and Defendant.  In one such conversation, Defendant discussed funding Guillermo Delgado's flight out of the country to avoid prosecution.  This conversation falls outside the ambit of a lawful JDA and is not the type of communication that society would view as reasonably private.  *See Davis v. United States*, 413 F.2d 1226, 1233 (5th Cir. 1969) ("When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard . . . It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetition, is instead recording it or transmitting it to another.") (quoting *Katz v. United States*, 389 U.S. 347, 359 n.24 (1967)).  I

*United States v. White*, 401 U.S. 745 (1971), quoted by Defendant, articulates why Defendant could not have had a "reasonable" expectation that his conversations with the Delgado Brothers in which he makes multiple statements in furtherance of ongoing crimes would be kept private: "[i]nescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police.  If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize.  But if he has no doubts, or allays them, or risks that doubts he has, the risk is his."  *Id*. at 752.  Neither the Fourth Amendment nor any other grounds cited by Defendant provides a basis on which to suppress the recordings.

## **CONCLUSION**

For the foregoing reasons, the Motions should be denied.


Dated: April 28, 2017                     Respectfully submitted,

                                          ANDREW WEISSMANN, CHIEF
                                          CRIMINAL DIVISION, FRAUD SECTION
                                          U.S. DEPARTMENT OF JUSTICE

                                          BENJAMIN G. GREENBERG
                                          ACTING UNITED STATES ATTORNEY


By:          *s/ Elizabeth Young*
             Elizabeth Young (FL Bar #A5501858)
             Elizabeth.Young@usdoj.gov
             Trial Attorney
             United States Department of Justice
             Criminal Division, Fraud Section
             1400 New York Avenue, N.W.
             Washington, D.C. 20005
             Telephone: (202) 262-7650

             Drew Bradylyons (FL Bar #A5502242)
             Drew.Bradylyons@usdoj.gov
             Trial Attorney
             United States Department of Justice
             Criminal Division, Fraud Section
             1400 New York Avenue, N.W.
             Washington, D.C. 20005
             Telephone: (202) 262-7809

             Daniel Bernstein (FL Bar #17973)
             Daniel. Bernstein@usdoj.gov
             Assistant United States Attorney, SDFL
             United States Attorney's Office
             99 N.E. 4th Street
             Miami, FL 33126
             Telephone: (305) 961-9169

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on April 28, 2017, a true and correct copy of the foregoing was filed

and served on all counsel of record via the CM/ECF system.

<u>*s/ Drew Bradylyons*</u>
Drew Bradylyons (FL Bar #A5502242)
Drew.Bradylyons@usdoj.gov
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 262-7809